## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | |
| | : | |
| DY Properties, LLC, | : | No. 132 C.D. 2019 |
| Appellant | : | Argued: November 12, 2019 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                           FILED: December 12, 2019

DY Properties, LLC (DY) appeals from the Philadelphia County Common Pleas Court's (trial court) December 20, 2018 order issuing a stop work order, granting a final injunction and imposing a statutory fine for violations of The Philadelphia (City) Code (Code). There are four issues for this Court's review: (1) whether DY waived constitutional and evidentiary arguments by failing to appear before the trial court and present arguments; (2) whether the fine was excessive in violation of the United States and Pennsylvania Constitutions; (3) whether the trial court abused its discretion by imposing the fine; and (4) whether the trial court's opinion reflects bias or partiality. After review, we affirm.

In July 2017, DY purchased the property located at 3325 North 9th Street in the City (Property) at sheriff's sale. On April 13, 2018, the City's Department of Licenses and Inspections (Department) inspector Martin Raudenbush (Raudenbush) inspected the Property and identified Code violations that included: DY's lack of a vacant property license;[1] combustible waste accumulation on the

---

[1] Section 9-3905(1) of the Code provides:

exterior of the building; combustible debris accumulation in the building's interior; an inoperable sprinkler system; lack of certification evidencing that the fire suppression system was tested and in good working order; and missing downspouts. On April 17, 2018, the Department issued an Initial Notice of Violation and Order, case number 629052 (April Violation Notice), listing the aforementioned violations and directing that they be corrected.[2] DY did not appeal from the April Violation Notice.

On May 24, 2018, Raudenbush reinspected the Property and, on May 28, 2018, issued a final warning (Final Warning) to DY because the violations had not been corrected. Raudenbush also discovered that the Property was now occupied by an auto repair shop. Raudenbush reinspected the Property on May 26, 2018, and issued a second final warning as it remained in violation of the Code, case number 636058 (May Violation Notice),[3] for DY's failure to obtain a use registration permit and a certificate of occupancy for the auto repair shop. Raudenbush also delivered a Notice of Intent to Cease Operations and Order (Notice of Intent) unless the violations were corrected by July 3, 2018. DY did not appeal from the May Violation Notice and did not respond to the Notice of Intent. On July 3, 2018, the Department issued a cease operations order (Cease Operations Order) and posted it on the Property. On July 17, 2018, Raudenbush conducted a follow-up inspection of the

---

The owner of any structure that lacks the habitual presence of human beings who have a legal right to be on the premises, or at which substantially all lawful business or construction operations or residential occupancy has ceased within the past three (3) months, shall obtain a Vacant Structure License.

Phila., Pa., Code § 9-3905(1) (2015).

[2] The April Violation Notice was addressed to two different record owners, one of whom was Yoret Meir, also known as Yosef Meir, DY's owner.

[3] There is no Initial Notice of Violation and Order in the Reproduced Record for case number 636058.

Property to determine whether DY complied with the Cease Operations Order. Raudenbush observed that the loading dock door was open, and individuals were performing automobile tire changes and wheel work. Raudenbush posted another Cease Operations Order notice.

On August 22, 2018, the City filed a complaint with a proposed rule to show cause and proposed order of a permanent injunction (Complaint) in the trial court seeking an order directing DY to correct all violations[4] and imposing fines for past and ongoing violations and statutory reinspection fees.[5] On October 11, 2018, the trial court held a hearing, at which DY's owner Yoret Meir, also known as Yosef Meir (Meir), appeared and accepted service on DY's behalf. The trial court continued the hearing until December 20, 2018, and a new hearing notice was issued to the parties. DY did not file an answer to the Complaint.

On December 20, 2018, the trial court held the scheduled injunction hearing. However, neither Meir nor any other DY representative appeared. DY's tenant, Nicholas Adeleye (Adeleye) attempted to participate in the hearing; however, upon the City's objection, the court informed Adeleye that he did not have standing to do so. Thereafter, the City presented Raudenbush's testimony regarding his inspections of the Property and the violations he observed. He also described that, on November 21, 2018, long after the Cease Operations Order had been posted, while performing an inspection next door to the Property, Raudenbush again observed individuals performing tire changes at the Property. He required all individuals to vacate the Property. Finally, Raudenbush testified that the violations had not been

---

[4] The Complaint and proposed order did not include the use permit violation contained in the May Violation Notice because, (although not of record) according to the City, DY obtained a use permit before the City filed the Complaint.

The City contends that DY was required to obtain a vacant property license because DY did not have an occupancy permit and, thus, the tenant's occupancy was illegal.

[5] Notably, DY's Code violations continued even after the City filed the Complaint.

3

corrected; specifically, DY had not obtained a certificate of occupancy, the combustible material had not been removed from the Property, and the sprinkler system was not operational.

The City asked the trial court to order that the violations be corrected and that the Property remain vacant until DY complied. The City also requested fines totaling $243,200.00. The City explained that, of the total fine, $133,000.00 represented the $150.00 daily fine for each of the five violations[6] referenced in the April Violation Notice for 75 days, plus a fine of $1,000.00 per day for violating Section F-915.1 of the Code[7] (pertaining to testing and certification of the fire suppression system). The remaining $110,200.00 of the fine consisted of a $2,000.00 per day fine for DY's ongoing failure to obtain a certificate of occupancy as the May Violation Notice mandated.[8] Because DY did not attend the hearing, it did not challenge the City's calculations, claim that the City's request was excessive, or otherwise oppose the fine. By December 20, 2018 order, the trial court granted the City's requested relief.

On January 9, 2019, counsel for DY entered his appearance and filed a motion for reconsideration (Reconsideration Motion), wherein DY averred, *inter alia*, that: Raudenbush inspected the Property on December 19, 2018; Raudenbush saw the

---

[6] At the time the City filed the Complaint, Section A-601.1 of the Code provided:

> Any person who shall violate any provision of this [C]ode or the technical codes or regulations adopted thereunder; or who shall fail to comply with any order issued pursuant to any section thereof . . . shall be subject to a fine of not less than $150.00 and not more than $300.00 for each offense.

Phila., Pa., Code § A-601.1.

[7] Pursuant to Section A-601.2 of the Code, a violation of Section F-915 of the Code is a Class II offense. Section 109(2) of the Code provides for a maximum $1,000.00 fine for each Class II offense committed on or after January 1, 2006.

[8] Section A-601.3 of the Code provides that a violation of Section A-701 of the Code is a Class III offense. Section 1-109(3)(e) of the Code provides for a maximum $2,000.00 fine for each Class III offense committed on or after January 1, 2009.

4

permits issued for the electrical work (issued October 12, 2018) and fire suppression system (issued December 18, 2018), and informed Adeleye that he would request a continuance of the December 20, 2018 hearing; the City did not request the continuance; and DY did not attend the hearing because the hearing was to be continued. DY also argued that the fine was excessive. DY attached copies of the permits and Adeleye's affidavit describing the inspector's representation as exhibits to the Reconsideration Motion. The City asserted in its response to the Reconsideration Motion (Response) that the permits were not in evidence, and denied that Raudenbush told Adeleye the hearing would be continued, that the City would request a continuance, or otherwise stated that DY should not attend the hearing. The City attached Raudenbush's affidavit to its Response.

On January 22, 2018, the trial court held a hearing on the Reconsideration Motion, at which both Adeleye and Raudenbush testified.[9] Thereafter, the trial court denied the Reconsideration Motion from the bench. DY appealed to this Court.[10]

Before addressing DY's arguments on appeal, this Court must consider the City's contention that DY waived all issues by failing to appear and raise them at the December 20, 2018 trial court hearing.[11]

---

[9] The original record does not contain a transcript of the hearing on the reconsideration motion.

[10] "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002). Further, "[w]hether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

[11] DY does not dispute that it received notice of the hearing but, rather, contends that Raudenbush informed Adeleye that he would request a continuance and, therefore, DY's absence should be excused. Both Raudenbush and Adeleye testified at the Reconsideration Motion hearing about Raudenbush's purported representations to Adeleye. The trial court as factfinder considered the testimony, evaluated the witnesses' credibility and denied the Reconsideration Motion. Notably, "the purpose of post-trial motions is for the court to correct its own errors, not for parties to remedy their own mistakes." *Drake Mfg. Co., Inc. v. Polyflow, Inc.*, 109 A.3d 250, 263 (Pa.

5

"'[T]o preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions.' Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves 'a basic or fundamental error.'" *Mun. Auth. of the Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015) (original emphasis omitted) (quoting *Dennis v. Se. Pa. Transp. Auth.*, 833 A.2d 348, 352 (Pa. Cmwlth. 2003)). Failure to appear at a hearing may result in a waiver of all arguments for appeal. *See City of Phila. v. Frempong*, 762 A.2d 395, 397 (Pa. Cmwlth. 2000) (Where appellants failed to attend the hearing, the trial court issued a permanent injunction directing the removal of a commercial truck from a residential property. On appeal, this Court affirmed concluding that "[a]ppellants' failure to attend the hearing and raise issues that could be heard on appeal is fatal to their claim."). Specifically, the Pennsylvania Supreme Court has found an excessive fines

---

Super. 2015); *see also Paparelli v. GAF Corp.*, 549 A.2d 597 (Pa. Super. 1988). This Court has explained:

> **An order denying reconsideration is unreviewable on appeal.** *See Huntington Nat. Bank v. K-Cor, Inc.*, 107 A.3d 783, 787 (Pa. Super. 2014) ('Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal.'); *see also Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011) (noting that issues not raised before the trial court are not preserved for appeal, and issues raised in motions for reconsideration are beyond the jurisdiction of th[e] [c]ourt). Further, **a trial court may also properly refuse to consider new evidence presented for the first time in a motion for reconsideration**. *See Kelly v. Siuma*, 34 A.3d 86, 94 n.8 (Pa. Super. 2011).

*Bollard & Assocs. v. H & R Indus., Inc.*, 161 A.3d 254, 256 (Pa. Super. 2017) (emphasis added); *see also, Fullman v. Bureau of Admin. Adjudication* (Pa. Cmwlth., No. 975 C.D. 2018, filed April 30, 2019). Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported opinions are not binding precedent, but may be cited for their persuasive value. *Fullman* is cited herein for its persuasive value. Accordingly, this Court may not review the trial court's order denying reconsideration.

6

challenge is waived where the issue was not raised before an administrative tribunal. *See HIKO Energy, LLC v. Pa. Pub. Util. Comm'n*, 209 A.3d 246 (Pa. 2019). This Court has also previously found waiver of excessive fine allegations where such allegations were not raised before the trial court. *See Commonwealth v. Dennis* (Pa. Cmwlth., No. 1873 C.D. 2013, filed October 9, 2014); *see also In re: 1448 W. Loudon St.* (Pa. Cmwlth., No. 201 C.D. 2012, filed August 19, 2013); *Commonwealth v. 928 W. Lindley Ave, Phila., Pa.* (Pa. Cmwlth., No. 766 C.D. 2012, filed May 2, 2013).

> This Court has previously held that **where an issue which could have been raised earlier is raised for the first time in a motion for reconsideration, it is not preserved for appellate review**. *See Bedford Downs M*[*gmt.*] *Corp*[.] *v. State Harness Racing Comm*[*'n*], . . . 926 A.2d 908, 924 ([Pa.] 2007) ('[I]ssues raised for the first time in a reconsideration request, after the agency has issued its adjudication, cannot be regarded as raising the issues while the matter was before the agency.'); *Ramsey v. P*[*a.*] *Milk M*[*ktg.*] *B*[*d.*], . . . 572 A.2d 21, 25 ([Pa. Cmwlth.] 1990); *Frankford Hosp*[.] *v. Dep*[*'t*] *of Pub*[.] *Welfare*, . . . 466 A.2d 260, 262 ([Pa. Cmwlth.] 1983); *see also Rabatin v. Allied Glove Corp*[.], . . . 24 A.3d 388, 391 ([Pa. Super.] 2011) ('While the issue was included in the subsequently filed motion for reconsideration, issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal.').

*Lin v. Bd. of Revision of Taxes of the City of Phila.*, 137 A.3d 637, 643 (Pa. Cmwlth. 2016) (emphasis added).

In the instant action, DY did not appear at the December 20, 2018 trial court hearing. Had it done so, it could have opposed the City's requested fines as excessive. "Issues not raised at the earliest possible time during a proceeding are waived." *Grever v. Unemployment Comp. Bd. of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010), *superseded on other grounds by* Pa.R.A.P. 1513(d), *as recognized in Morgan v. Unemployment Comp. Bd. of Review*, 108 A.3d 181 (Pa. Cmwlth. 2015).

7

Because DY failed to appear at the hearing and challenge the City's request for the $243,200.00 fine as constitutionally excessive, DY did not raise the issue "at the earliest possible time during [the] proceeding[.]" *Id.* Accordingly, because DY raised the issue for the first time in the Reconsideration Motion, it was not preserved for appellate review, and this Court may not now address it.[12]

---

[12] Even if DY had not waived the excessive fines argument, this Court would find that the fines were constitutional. The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. Const. amend. VIII. The Pennsylvania Constitution similarly provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." Pa. Const. art. I, § 13. A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). The Pennsylvania Supreme Court has explained:

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

*Eisenberg*, 98 A.3d at 1283 (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)). Thus, a fine must be "reasonably proportionate to the crimes which occasion them." *Eisenberg*, 98 A.3d at 1287. However, "[the Pennsylvania Supreme Court] and the Commonwealth Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281.

In *Eisenberg*, the Court found that the $75,000.00 fine imposed for a misdemeanor theft of $200.00 was constitutionally excessive. *Id.* at 1287. Citing to *Church* and two Commonwealth Court cases, *Eckhart v. Department of Agriculture*, 8 A.3d 401 (Pa. Cmwlth. 2010), and *Commonwealth v. CSX Transportation, Inc.*, 653 A.2d 1327 (Pa. Cmwlth. 1995), the *Eisenberg* Court distinguished the fines imposed therein, explaining:

> In *Church*, overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In *Eckhart*, the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000[.00] based on a $100[.00]-$500[.00] **per dog/per day** penalty scheme, $15,000[.00] of which appellant claimed was excessive in light of perceived triviality of the offense. In *CSX*, the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000[.00] fine, based on a $10[.00] **per fish** calculation.

*Eisenberg*, 98 A.3d at 1287 n.24.

DY contends that the trial court abused its discretion by granting the injunction[13] and imposing the fine. Since DY's abuse of discretion argument pertains to the trial court's decision and could not have been raised until after the trial court rendered it, that argument was not waived.

This Court has ruled that "[a] trial court abuses its discretion if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will. An abuse of discretion is not merely an error of judgment." *In re Ten Thousand Six Hundred Eighty Dollars*, 728 A.2d 403, 406 (Pa. Cmwlth. 1999) (citation omitted).

Section A-601 of the Code specifies penalties for Code violations. When the City filed its Complaint, Section A-601.1 of the Code provided for basic fines ranging between $150.00 and $300.00 for each offense. Sections 601.2 and 601.3 of the Code describe violations constituting Class II and Class III offenses, and

---

Here, the fines issued against DY were similarly imposed per day based upon repeated daily violations of numerous Code provisions. The violations pertained to potentially hazardous conditions on the Property which remained for approximately eight months, despite City demands to remediate. Thus, the significant fine was an accumulation of penalties arising solely from DY's repeated and ongoing failure to correct the violations.

[13] Although DY asserts in the Argument portion of its brief that "[t]here was an adequate remedy at law, and *the issuance of the injunction* and fine were an abuse of discretion," DY's Statement of Questions Involved makes no reference to the propriety of the trial court's grant of the injunction or whether the City had an adequate remedy at law. DY Br. at 10 (bold emphasis omitted, italic emphasis added). Rather, DY's Statement of Questions Involved pertaining to the trial court's purported abuse of discretion states: "Did the [trial court] abuse [its] discretion by imposing a fine of such magnitude, given that the underlying statute has a range, and that a permit was active, and [Adeleye] was present at the hearing?" DY Br. at 2. "Issues not included in the Statement of Questions [Involved] are waived and need not be considered by the Court **even if they are addressed in the argument section of the brief**." *Kalmeyer v. Mun. of Penn Hills*, 197 A.3d 1275, 1279 n.1 (Pa. Cmwlth. 2018) (emphasis added); *see also* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the [S]tatement of [Q]uestions [I]nvolved or is fairly suggested thereby."). Accordingly, that argument is waived.

This Court notes that because the trial court's opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), relied on DY's Statement of Questions Involved, it did not discuss the basis for the trial court's grant of the permanent injunction.

9

mandate that **such violations shall be "subject to the maximum fine set forth in subsection[s]" 1-109(2) and 109(3) [of the Code], respectively**. Phila., Pa., Code §§ A-601.2, A-601.3 (emphasis added). Section A-601.4 of the Code further states: "Each day that a violation continues after issuance of a notice or order shall be deemed a separate offense." Phila., Pa., Code § A-601.4. Section 109(2) of the Code provides for a maximum $1,000.00 fine for each Class II offense committed on or after January 1, 2006. Section 1-109(3)(e) of the Code provides for a maximum $2,000 fine for each Class III offense committed on or after January 1, 2009.

Here, the evidence before the trial court established that, from April 13, 2018 to December 20, 2018, the Department attempted numerous times to require DY to remediate its violations, which included an inoperable fire suppression system and accumulations of combustible material. Despite the issuance of the April Violation Notice, DY permitted Adeleye to occupy the Property. Even after the Department issued the May Violation Notice, and in July, subsequently posted the Cease Operations Order notice, Adeleye continued to operate the auto repair business at the Property, such that Raudenbush (who, by happenstance, observed the business still operating) was forced to order those present to vacate the Property.

Because DY did not appeal from the April Violation Notice or the May Violation Notice[14] or answer the Complaint, all of the City's allegations against DY

---

[14] DY argues that, since Adeleye was responsible for some of the violations of use, he should have been granted standing at the hearing. DY further contends that the imposition of the fines is unfair since Adeleye's violations were included in DY's fines. However, the fines were issued resulting from the unappealed April Violation Notice and May Violation Notice. Had DY appealed from those notices, it could have argued that Adeleye, rather than DY was responsible. It did not do so. Further, Section A-105.2 the Code, cited by DY, provides:

> If an occupant of a structure **creates conditions** in violation of this [C]ode or the technical codes, by virtue of any improper use of the premises or by virtue of storage, handling and use of substances, materials, devices and appliances, the occupant shall be responsible for the abatement of said hazardous condition.

were deemed admitted. *See* Reproduced Record at 92a. Thus, it is undisputed that DY violated the Code. Moreover, the trial court imposed fines in accordance with the aforementioned Code sections. Although this Court agrees that the trial court's fine was significant, the fine was the direct result of DY's ongoing violations and failure to remediate. This Court discerns no abuse of discretion.[15]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

Phila., Pa., Code § A-105.2 (emphasis added). Notably, since the violations described in the April Violation Notice and the May Violation Notice pertained to conditions that were documented prior to Adeleye's occupancy, Adeleye did not "create[ the violative] conditions." *Id.*

[15] In its brief, DY argues that this Court should "reverse and vacate the [trial court's December 20, 2018 order] . . . and remand to the [trial court] with instructions on how to proceed." DY Br. at 19. DY also asserts that the trial court's opinion reveals "partiality and bias sufficient that[,] on remand, a new judge [should] be assigned[.]" *Id.* at 3. Since this Court herein affirms the trial court's decision, this Court denies DY's request. Notwithstanding, we note that "[a] motion for recusal must be raised in the first instance with the trial court, who must always be given the opportunity to act on the request in the first instance." *Brannam v. Reedy*, 906 A.2d 635, 642 (Pa. Cmwlth. 2006). There is nothing in the record reflecting that DY has ever moved the trial court judge for recusal, nor does DY assert in its brief that it did so.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia            :
                                          :
         v.                         :
                                          :
DY Properties, LLC,           :         No. 132 C.D. 2019
              Appellant       :

## O R D E R

AND NOW, this 12th day of December, 2019, the Philadelphia County Common Pleas Court's December 20, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge