**Brian K. MORGAN, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,** **Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 8, 2014.

Decided Jan. 14, 2015.

Martin J. Clancy, Pittsburgh, for petitioner.

Jacqueline Wolfgang, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

Brian K. Morgan (Claimant) petitions for review of the September 20, 2013, Order of the Unemployment Compensation (UC) Board of Review (Board) denying Claimant UC benefits pursuant to Section 402(b) of the UC Law (Law).[1] On appeal, Claimant argues that the Board's denial was improper because: (1) two of the Board's findings are not supported by substantial evidence; and (2) Coal Innovations, LLC's (Employer) decision to stop paying for commuting expenses was a substantial and unilateral change in the terms of Claimant's employment that constituted a necessitous and compelling reason to resign. Discerning no error, we affirm.

Following Claimant's resignation from Employer, Claimant filed a claim for UC benefits with the UC Service Center. The UC Service Center denied Claimant UC benefits, finding that Claimant failed to meet his burden of proof under Section 402(b) of the Law. (Notice of Determination, R. Item 7.) Claimant appealed to the UC Referee. After an evidentiary hearing, at which Claimant and Employer, with two witnesses, appeared and testified, the UC Referee also determined that Claimant

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that an employee is ineligible for benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." *Id.*

was ineligible for UC benefits because he failed to satisfy his burden of proof under Section 402(b) of the Law. Claimant appealed the UC Referee's decision to the Board.

Upon review, the Board made the following findings of facts:

1. The claimant was last employed as a foreman by [Employer] from October 18, 2010, at a final rate of $22 per hour, and his last day of work was March 28, 2013.

2. When the claimant first began working for the employer, the claimant commuted to and from work with the employer's director of processing (Director).

3. In approximately July of 2011, the claimant began using the employer's vehicle, gas, and EZ pass to travel to and from the workplace.

4. In approximately September of 2012, [Employer] was purchased by another company.

5. On March 28, 2013, the employer informed the claimant that he was no longer permitted to use the employer's vehicle, gas, and EZ pass to travel to and from work.

6. In response to the employer, the claimant said he was quitting his employment.

7. The employer suggested that the claimant reconsider his decision to resign and informed him that he could commute with the employer's [Director].

8. The claimant personally owns two vehicles.

9. The claimant quit his employment because he did not have affordable transportation to the employer's workplace.

(Board Decision, Findings of Fact (FOF) ¶¶ 1–9.)

Based on its findings, the Board concluded that:

Here, the employer credibly testified that immediately after it informed the claimant that he would no longer be permitted to use the employer's company vehicle, gas, and EZ pass to travel to and from the employer's workplace, the claimant quit his employment. Prior to quitting the claimant did not search for or investigate other means of transportation. The employer also credibly testified that it informed the claimant he could commute with the employer's [Director], which he had done in the past. Nevertheless, the claimant did not accept the employer's offer of transportation and did not attempt to preserve his employment. Additionally, the claimant presented insufficient credible evidence to show that he did not have affordable transportation. As such, the Board cannot conclude that the claimant quit his employment for necessitous and compelling reasons.

In his appeal, the claimant's counsel asserts that the employer's decision to disallow the claimant to use the company vehicle, gas, and EZ pass was a substantial and unilateral change in his terms of employment because it was in effect a reduction in his salary. However, during the hearing the claimant testified that he quit his employment because he did not have affordable transportation; therefore, the Board does not find credible the assertion that the claimant quit his employment due to a change in his salary. As such, the Board concludes that the claimant quit his employment because of transportation and not because of a change in his salary. Even if the Board concluded that the claimant quit his employment because of a change in his salary, given the employer's testimony that other means of transportation

[were] available, which would have negated additional transportation costs, the Board cannot conclude that a substantial and unilateral change in the terms and conditions of employment occurred.

(Board Decision at 2–3.) Therefore, the Board denied Claimant UC benefits under Section 402(b) of the Law. Claimant now petitions this Court for review of the Board's Order.[2]

In support of his appeal, Claimant argues that: (1) the Board's findings of fact 7 and 9 are not supported by substantial evidence; and (2) the Board erred when it conducted an availability of transportation analysis instead of a substantial and unilateral change in the terms of employment analysis to decide that Claimant did not have a necessitous and compelling cause to resign under Section 402(b) of the Law.

■ Claimant first argues that the Board's finding of fact 7—that Employer suggested to Claimant that he should reconsider resigning because he could commute with Director—is not supported by substantial evidence. Claimant argues that instead of offering alternative transportation, Employer merely informed Claimant it would no longer pay for his transportation.

■ The Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 335 (Pa.Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa.Cmwlth.1999)). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *Western & Southern Life Insurance Co.*, 913 A.2d at 335. This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings. *United States Banknote Co. v. Unemployment Compensation Board of Review*, 133 Pa.Cmwlth. 317, 575 A.2d 673, 674 (1990). Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence." *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa.Cmwlth.2000).

In the instant case, the Board's finding that Employer suggested to Claimant that he could commute with Director, instead of resigning, is supported by substantial evidence. When Claimant was asked during the UC Referee's hearing about how he originally commuted to work he affirmed that he rode "to and from work with John Ross ... the [Director]" from when he first started working for Employer in 2010 "until approximately ... April or May of 2011." (Hr'g Tr. at 7, R. Item 13.) Later in the hearing, Employer's general manager of administration (Manager) recounted what occurred after Claimant was notified that Employer would no longer pay for his vehicle, gas, and EZ pass:

---

2. Our review of the Board's Decision "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n. 2 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 97 A.3d 746 (2014).

[Claimant] said that's not a problem for me, and [Manager] said, oh good. [Claimant] said because I resign. And [Manager] told [Claimant] you don't have to resign, John Ross [the Director] can give you a ride home, you can, you can figure out something else, but you're just not going to do it on the company dime anymore. [Claimant] didn't say anything else, he didn't say about being an economic hardship, not being able to afford it, he said nothing else. In fact [Claimant] looked pretty smug, fine, I resign. And then actually [Manager] ... [told Claimant] to gather his personal belongings, leave all company property on the property, and that John Ross would give him a ride home at the end of the day, and that was it. . . .

(Hr'g Tr. at 21.)

A reasonable mind could accept this testimony as adequate to support a conclusion that Manager informed Claimant that he could commute with Director. *Western & Southern Life Insurance Co.,* 913 A.2d at 335. In light of the fact that Claimant testified that he previously commuted with Director, the Board could logically and reasonably infer that Manager's statement that Claimant could get a ride home with Director was a suggestion to commute with Director. *United States Banknote Co.,* 575 A.2d at 674. Moreover, Manager's statement that Claimant did not have to resign and that Director would give him a ride home is, to some extent, a non-sequitur in the absence of a suggestion that Claimant commute with Director. Accordingly, we conclude that there is substantial evidence in the record to support the Board's finding of fact 7.

■ Next, Claimant argues that the Board's finding of fact 9—that Claimant quit his employment because he did not

have affordable transportation to work—is not supported by substantial evidence. Claimant argues that he actually quit because Employer's decision made his *commuting expense* unaffordable. The Board argues that this issue has been waived because Claimant did not challenge finding of fact 9 in his Petition for Review.

At the time Claimant filed his petition for review, Rule 1513(d) of the Pennsylvania Rules of Appellate Procedure provided that "[a] petition for review must contain, *inter alia,* "(4) reference to the order or other determination sought to be reviewed ... [and] (5) a general statement of the objections to the order or other determination." Pa. R.A.P. 1513(d) (Former Rule). Rule 1513(d) also provided that "[t]he statement of objections will be deemed to include every subsidiary question fairly comprised therein." *Id.* Thus, this Court consistently held that "[i]ssues not raised in the petition for review before this court but raised in the petitioner's brief [were] ... waived." *Grever v. Unemployment Compensation Board of Review,* 989 A.2d 400, 402 (Pa.Cmwlth.2010); *see also McDonough v. Unemployment Compensation Board of Review,* 670 A.2d 749, 750 (Pa. Cmwlth.1996) (where an issue argued in a "[c]laimant's brief on appeal [is] not raised in his petition for review .... we decline consideration of [the] issue"). Effective January 1, 2015, Rule 1513(d) was amended by the Supreme Court and now states that a petition for review must contain "a general statement of the objections to the order or other determination, but the omission of an issue from the statement shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record." Pa. R.A.P. 1513(d) (Revised Rule). Claimant did not specifically challenge the Board's finding of fact 9 in his Petition for Review,[3]

3. The sole objections in the Petition for Review to the Board's Order state:

and so the Board is correct that under the previous version of Rule 1513(d) we would have been constrained to find waiver. However, even if we were to apply the newly revised Rule 1513(d) to his Petition for Review, Claimant would not be successful. In Claimant's Internet Initial Claims form he stated that he quit due to transportation problems resulting from Employer's decision to take away his company truck. (Internet Initial Claims, R. Item 2.) Moreover, Claimant testified that he quit because he lost his "company vehicle and could not afford to drive [to work] with [his] personal vehicle" and that, when he resigned, the explanation he offered Employer was that he "couldn't afford to drive there, and that was about it." (Hr'g Tr. at 5, 10.) Accordingly, the Board's finding of fact 9 is supported by Claimant's own testimony and is, therefore, supported by substantial evidence.

■ Next, Claimant argues that Employer's decision to take away his company vehicle, fuel, and EZ pass was a substantial and unilateral change in the terms of his employment, which constituted a necessitous and compelling reason for Claimant to quit under Section 402(b) of the Law. Because Claimant's transportation benefits were worth about $90.00 per day, Claimant argues that the Board erred in analyzing Claimant's loss of those benefits as a "transportation problem" rather than as a "substantial and unilateral change in the terms and conditions of employment." (Claimant's Br. at 13.)

■■ Section 402(b) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . ." 43 P.S. § 802(b). An employee seeking UC benefits after voluntarily terminating his employment has the burden of proving that he had a necessitous and compelling reason for quitting. *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review,* 906 A.2d 657, 660 (Pa. Cmwlth.2006) (citing *Fitzgerald v. Unemployment Compensation Board of Review,* 714 A.2d 1126, 1129 (Pa.Cmwlth.1998)). Therefore, this Court has held that an employee who claims to have quit his job for a necessitous and compelling reason must demonstrate that:

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve h[is] employment.

*Id.* (citing *Fitzgerald,* 714 A.2d at 1129). "Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law fully reviewable by this Court." *Id.* at 661.

■ "It is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate h[is] employ-

(6) The Board's Finding of Fact 7. "The employer suggested that the claimant reconsider his decision to resign and informed him that he could commute with the employer's [Director]" is contrary to the evidence of record.

(7) The reasoning in the Board's "Discussion" supporting its decision is based on statements that are irrelevant to the central issue—the employer's termination of benefits equal to approximately 50% of claimant's daily wage—or contradicted by evidence in the record.

(Petition for Review ¶¶ 6, 7.)

ment." *Id.* at 660 (citing *A–Positive Electric v. Unemployment Compensation Board of Review,* 654 A.2d 299, 302 (Pa. Cmwlth.1995)). In particular, "[a] substantial reduction in pay can constitute such a necessitous and compelling reason." *A–Positive Electric,* 654 A.2d at 302.

In order to demonstrate that a substantial unilateral change in the terms of employment has occurred and, thereby, establish that the claimant had a necessitous and compelling reason for terminating his employment, the claimant must also prove that he made a reasonable effort to preserve his employment. *Brunswick Hotel & Conference Center,* 906 A.2d at 662. For example, in *Mauro v. Unemployment Compensation Board of Review,* 751 A.2d 276, 279 (Pa.Cmwlth.2000), the Board denied the claimant benefits after concluding that he did not make a reasonable effort to preserve his employment. In that case, when the claimant, a single parent, was initially hired by the employer he made it clear that his work hours needed to coincide with his daughter's day care schedule. *Id.* at 278. However, the employer later changed the claimant's work schedule to require him to work longer hours. *Id.* On appeal we reversed the Board's determination, holding that the claimant made a reasonable effort to preserve his employment because he asked the employer, before quitting, if there was something that could be worked out with respect to his daughter's day care schedule. *Id.* at 279; *see also, Brunswick Hotel & Conference Center,* 906 A.2d at 662 (where the employer terminated the claimant's health insurance, the claimant demonstrated a reasonable effort to preserve employment by working eight months without health insurance).

In the instant case, Claimant asserts that Employer's decision to stop paying for his commuting expenses was a substantial unilateral change in the terms of his employment because he would have to incur the additional cost of commuting to work, which he estimates would cost approximately $90 per day. Claimant argues that the Board erred in analyzing Claimant's loss of UC benefits as a transportation problem rather than as a substantial and unilateral change in the conditions of employment.

Contrary to Claimant's assertion, the Board did consider, in two separate instances, whether Claimant's loss of transportation benefits constituted a substantial unilateral change in the terms of Claimant's employment. First, since Claimant did not testify that the reason he quit was due to a salary reduction, but instead testified that he quit "because he did not have affordable transportation," the Board decided Claimant was not credible when he asserted, on appeal, that he quit due to a substantial reduction in his salary. (Board Decision at 3.) Therefore, the Board concluded that, "[C]laimant quit his employment because of transportation and not because of a change in his salary." (Board Decision at 3.)

In UC cases, the Board is the ultimate finder of fact and questions regarding the weight of evidence and witness credibility are solely within its province. *First Federal Savings Bank v. Unemployment Compensation Board of Review,* 957 A.2d 811, 815 (Pa.Cmwlth.2008). As the fact finder, the Board was free to weigh the evidence as it saw fit and accept or reject Claimant's testimony. Because the Board determined Claimant's assertion that he quit due to a loss in salary was not credible, based on Claimant's previous testimony that he quit due to not having affordable transportation, the Board did not err in analyzing Claimant's loss of transportation benefits as a transportation problem rather than as a substantial and

unilateral change in the terms of employment.

Second, although Claimant argues that the Board erred in not analyzing the loss of transportation benefits as a substantial and unilateral change in the terms of his employment, the Board actually conducted a separate substantial unilateral change analysis in addition to analyzing the loss of benefits as a transportation problem. Specifically, the Board concluded that "[e]ven if ... [C]laimant quit his employment because of a change in his salary, given ... [E]mployer's testimony that other means of transportation [were] available, which would have negated additional transportation costs ... a substantial and unilateral change in the terms and conditions of employment [had not] occurred." (Board Decision at 3.)

Upon review, we conclude that the Board correctly determined that there was not a substantial unilateral change in the terms of Claimant's employment because he has failed to demonstrate that he made a reasonable effort to preserve his employment. For example, rather than investigate alternative means of commuting to work, such as carpooling, or show that such an investigation would have been futile, Claimant simply quit as soon as he was informed that Employer would no longer pay for his commuting expenses. (Hr'g Tr. at 21.) In fact, Claimant did not investigate other means of commuting even though he previously carpooled with Director, and Employer suggested that he could resume commuting with Director. (FOF ¶¶ 2, 7.) Unlike in *Mauro*, where the claimant attempted to work something out with the employer prior to quitting, or *Brunswick Hotel & Conference Center*, where the claimant worked for eight months without health insurance before quitting, here Claimant did not make a reasonable effort to preserve his employ-

ment. Because Claimant did not make a reasonable effort to investigate other means of commuting to work, Claimant failed to demonstrate that a substantial unilateral change in the terms of his employment occurred. Therefore, Claimant did not have a necessitous and compelling reason for terminating his employment and the Board correctly denied Claimant UC benefits pursuant to Section 402(b) of the Law.

For the foregoing reasons, the Board's Order is affirmed.

### ORDER

NOW, January 14, 2015, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is **AFFIRMED.**

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. I believe that Claimant established a substantial and unilateral change in the terms of his employment that constituted a necessitous and compelling reason for his resignation. Employer's elimination of a valuable fringe benefit, unilaterally and without any advance warning, reduced Claimant's compensation by approximately 50%. That the fringe benefit was cost-free transportation to the workplace matters not to the question of whether it was a form of compensation.

Claimant began working for Employer on October 18, 2010, as a foreman. In addition to his hourly wage of $22.00, Employer provided him round trip transportation from his home to the work site, a trip of approximately 140 miles. Without this benefit, his cost of commuting would have

been $90 per day.[1] Initially, Employer's executive vice president, John Ross, drove Claimant to and from work each day. Thereafter, Employer purchased a used pickup truck for Claimant; paid for the fuel; and provided him a Pennsylvania Turnpike EZ Pass. In August of 2012, Employer changed ownership, but it continued Claimant's employment on the same terms, including the payment of Claimant's commuting costs.

On March 28, 2013, Claimant reported to work and was instructed to return the company truck, that day. Employer also advised him that it would no longer reimburse him for fuel and tolls for commuting. Employer's general manager informed Claimant that John Ross would give him a ride home that day, after which he would have to arrange for his own transportation, which would no longer be "on the company dime." Notes of Testimony, May 24, 2013, at 21 (N.T. —). Claimant earned $176 per day. Eliminating a benefit worth $90 per day reduced Claimant's compensation to half of what he earned on March 27, 2013, the last day he enjoyed this benefit. Claimant resigned.

The Referee held that Claimant was ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law), 43 P.S. § 802(b),[2] because he quit without cause of a necessitous and compelling nature. Claimant appealed and the Board affirmed. In doing so, the Board rejected Claimant's argument that Employer's action effected a unilateral reduction in his compensation, holding that Claimant quit "because he did not have affordable transportation." Board Adjudication at 3.[3]

On appeal, Claimant first challenges Finding of Fact No. 7, which states:

> The employer suggested that the claimant reconsider his decision to resign and informed him that he could commute with the employer's director of processing.

Board Adjudication at 2. Claimant asserts this factual finding is not supported by substantial evidence. The relevant testimony was as follows:

> And I told him you don't have to resign, John Ross can give you a ride home, you can, you can figure out something else, but you're just not going to do it on the company dime anymore.

N.T. 21. I agree that this testimony does not support Finding of Fact No. 7. Employer simply arranged a ride home for Claimant for that day when he was deprived of the means to return home.[4] After that, Claimant had to "figure out something else" without any financial support from Employer.

Claimant also argues that the Board erred in analyzing this case as one con-

---

1. Using cost data from the American Automobile Association, Claimant calculated his commuting cost to be 60.8 cents per mile, or $85.12 per day plus turnpike tolls.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended.* 43 P.S. § 802(b).

3. Claimant challenged this reasoning of the Board, but it is irrelevant. The Board placed undue emphasis on Claimant's statement at the hearing that he lacked affordable transportation. Employer's reduction in compensation left Claimant unable to afford many things, including transportation. Claimant's statement does not conflict with his argument that his 50% drop in compensation gave him a necessitous and compelling reason to resign.

4. It cannot be reasonably inferred that John Ross would give him a ride home every day or that John Ross would do so *gratis.* Even if that were the point of the testimony, Claimant had to figure out a way to get *to* work before Ross could drive him home.

cerning transportation availability rather than a substantial and unilateral change in terms of employment, *i.e.*, a reduction in compensation. I agree. Claimant has never contended that he lacked a mode of transportation; he acknowledged that he owns two cars. Claimant's theory of the case from its inception was that a 50% reduction in his compensation left him with no choice but to quit. *See* Certified Record, Item No. 4, Employment Separation Questionnaire. Claimant testified that because he lost his company vehicle, he could not afford to drive to work. N.T. 5. Claimant's attorney emphasized throughout the hearing that the issue in the case was compensation, not transportation. N.T. 11, 18, 22–23. Availability of transportation and cases addressing that subject are simply inapposite to the case *sub judice.*[5]

Finally, Claimant argues that the Board erred in holding that he lacked a necessitous and compelling reason to resign. Again, I agree with Claimant.

A substantial reduction in pay constitutes a necessitous and compelling reason to leave employment and, thus, does not affect eligibility for unemployment compensation. *A–Positive Electric v. Unemployment Compensation Board of Review,* 654 A.2d 299, 302 (Pa.Cmwlth.1995).

"[W]here an employee benefit has special significance and intrinsic value to a claimant, an employer's unilateral alteration of that benefit and corresponding reduction in compensation gives a claimant necessitous and compelling cause for terminating employment." *Id.* Because there is "no talismanic percentage" for determining a substantial reduction, each case turns on its own circumstances. *Id.*

In *Steinberg Vision Associates v. Unemployment Compensation Board of Review,* 154 Pa.Cmwlth. 486, 624 A.2d 237, 238–39 (1993), six years after the claimant was hired, the employer notified her that it would no longer reimburse her health insurance premium of $235.16 per month. The loss of this reimbursement effected "a 14.2% reduction in earned compensation." *Id.* at 240. We held that "the [e]mployer's unilateral alteration of that benefit and corresponding reduction in compensation" constituted a necessitous and compelling reason to quit. *Id. See also Chavez (Token) v. Unemployment Compensation Board of Review,* 738 A.2d 77, 82 (Pa. Cmwlth.1999); *A–Positive,* 654 A.2d at 302–03.

In this case, from the time of his initial hire in 2010 and throughout his employ-

5. Transportation cases typically address whether a change in an employee's commute constitutes a necessitous and compelling reason to resign. Often it does. For example, in *Love v. Unemployment Compensation Board of Review,* 103 Pa.Cmwlth. 247, 520 A.2d 107 (1987), the claimant resigned after her employer transferred her to a new facility. The claimant, who did not drive, established that she would have to commute approximately three hours daily via public transportation to the new location. In allowing benefits, this Court reiterated that, traditionally, we have "balanced the increased traveling time and distance requirements against the compensation level and requirements of the job in question in determining whether transportation difficulties are 'virtually insurmountable.'"

*Id.* at 109 (quoting *J.C. Penney, Co. v. Unemployment Compensation Board of Review,* 72 Pa.Cmwlth. 445, 457 A.2d 161 (1983)). We concluded that the claimant had a necessitous and compelling reason to quit by reason of her employer increasing her commuting time to a half work-day. Similarly, in *J.C. Penney,* this Court affirmed the Board's finding that employer's relocation to a site sixteen miles farther away created an excessive commuting distance for a group of employees in light of their $3.07 hourly wage.

This case is not a transportation case that arose from a change in the distance of an employee's commute. Claimant's commute did not change. The only change in his employment was in the revocation of his employment benefit, *i.e.,* employer-paid commuting.

ment Employer assumed the cost of Claimant's commute. Claimant's evidence established that the value of the Employer-provided vehicle, and reimbursement of fuel and tolls was approximately $90 per day. N.T. 6, 13. Employer did not contest this figure. Claimant established that his gross salary at the time of his separation was $176 per eight-hour day. Certified Record, Item No. 3 (Employer's Notice of Application). On March 28, 2013, Employer unilaterally eliminated Claimant's commuting benefit without warning. Employer offered no evidence that the loss of Claimant's benefit was negotiable or capable of revision.

Claimant was not obligated to continue working under Employer's new terms. It is true, as the majority notes, that a claimant seeking to establish a necessitous and compelling reason for quitting must demonstrate, *inter alia*, that he made a reasonable effort to preserve his employment. *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth.2006). However, a unilateral reduction in compensation *in and of itself* provides a necessitous and compelling reason for quitting, if the reduction is substantial. *See, e.g., Steinberg Vision Associates*, 154 Pa.Cmwlth. 486, 624 A.2d 237; *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review*, 59 Pa.Cmwlth. 486, 430 A.2d 376 (1981) (salary reduction of 25%); *Ship Inn, Inc. v. Unemployment Compensation Board of Review*, 50 Pa.Cmwlth. 292, 412 A.2d 913 (1980) (claimant's $67.80 weekly salary reduced by $15). In these cases, this Court held that the claimants' salary reductions were substantial and provided a necessitous and compelling cause to immediately quit. Claimant's 50% reduction in compensation in the present case should compel the same result.

For these reasons, I would hold that Claimant satisfied his burden of proving a necessitous and compelling cause under Section 402(b) of the Law, 43 P.S. § 802(b), and would reverse.

President Judge PELLEGRINI joins in this dissent.