IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary E. Stead,                          :
               Petitioner          :
                              :
      v.                              :  No. 790 C.D. 2019
                              :  SUBMITTED: December 6, 2019
Unemployment Compensation               :
Board of Review,                        :
               Respondent          :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: February 7, 2020

Mary E. Stead (Claimant) petitions for review, *pro se*, of the May 24, 2019 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she voluntarily quit her employment without cause of a necessitous and compelling nature. We affirm the Board's Order.

## Background

Claimant worked as a part-time nanny for Jennifer Hong (Employer) from January 9, 2017 through January 8, 2019. Bd.'s Finding of Fact (F.F.) No. 1; Notes of Testimony (N.T.), 3/6/19, at 7. When Claimant began her employment, Employer

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits for any week "[i]n which his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

presented and discussed with Claimant a proposed employment agreement (2017 Agreement), which outlined the following details of the position: Claimant would work as a nanny for Employer's child (Child), approximately 30 hours per week at a pay rate of $15.00 per hour, and Employer would provide Claimant three sick days per year, as well as two weeks' paid vacation and five paid holidays. Bd.'s F.F. No. 2. The 2017 Agreement also included an addendum stating that Claimant would be responsible for performing certain household duties, including but not limited to: unloading and loading the dishwasher; wiping down counters; sweeping; light mopping; picking up toys and cleaning Child's room; preparing family dinners and Child's meals and snacks; setting up the morning coffee; washing, drying, folding, and ironing laundry; carrying laundry up and down the stairs; and other miscellaneous light housekeeping duties. *Id.* No. 3. Claimant worked under these conditions until her final day of work. *Id.* No. 4.[2]

Employer also employed Claimant, in a capacity separate from the nanny position, to perform a deep cleaning of Employer's home on a monthly basis, for which Employer paid Claimant a $100.00 flat fee. *Id.* No. 5.

During the last few months of Claimant's employment, Employer became concerned with Claimant taking Child outside the City of Pittsburgh, where Employer resided, to perform personal errands, sometimes without providing advance notice to Employer. *Id.* No. 6.

Around 3:30 p.m. on January 8, 2019, Employer met with Claimant to provide her with an updated employment agreement (2019 Agreement). *Id.* Nos. 7, 14. Before this meeting, Employer had given Claimant a pay raise, increasing her pay rate to $18.90 per hour. *Id.* No. 8. The 2019 Agreement was substantially the same

---

[2] It is undisputed that the 2017 Agreement was not signed by either Employer or Claimant. *See* Record (R.) Item No. 3, Ex. SC-11; N.T., 3/6/19, at 13, 16.

as the 2017 Agreement, with the following exceptions: Claimant's new pay rate would be $20.00 per hour, but if Claimant needed to conduct personal errands during work hours with Child, such activities were to be recorded in a daily log book, and Claimant would receive a reduced pay rate of $10.00 per hour. *Id.* Nos. 9, 10. The 2019 Agreement also provided for bonuses of up to $50.00 per pay period if Claimant met the following criteria: give Child a nap, or make a bona fide nap attempt, each day in Child's bed; no personal errands during work hours during the pay period; and no requests to leave early during the pay period. *Id.* No. 11. The 2019 Agreement also reduced Claimant's sick days from three days to two days per year. *Id.* No. 12.

After Employer presented the 2019 Agreement to Claimant, Claimant stated that "[i]t looked good." *Id.* No. 13. Claimant requested additional time to review and consider the 2019 Agreement, to which Employer agreed. *Id.* No. 15.

Three hours later, around 6:30 p.m., Claimant sent a text message to Employer stating that she reviewed the 2019 Agreement and decided not to continue her employment. *Id.* No. 16. In the text message, Claimant stated that she did not want to go into detail. *Id.* No. 17. Upon further questioning by Employer, Claimant stated that she would rather not discuss the matter. *Id.* Claimant did not communicate any specific reason for resigning to Employer. *Id.* No. 18.[3]

---

[3] In the text message, Claimant stated:

> I'd rather not discuss it. I'm very hurt and that whole contract was very disappointing and made me feel like you question my abilities. Again I would rather not discuss it. I am unable to work under anything on that contract. I will find another job quickly and I hope you find someone to[o].

R. Item No. 3, Ex. SC-12.

Employer was willing to work with Claimant to attempt to address any issues she may have had regarding the 2019 Agreement. *Id.* No. 19. Claimant voluntarily resigned from her employment on January 8, 2019, while continuing work remained available. *Id.* No. 20.

Claimant filed a claim for UC benefits, which the local UC Service Center granted. The Service Center found that: Claimant voluntarily quit her employment due to significant changes in the terms of hire; Claimant informed Employer of her reason for quitting; and Claimant exhausted all alternatives before voluntarily quitting. R. Item No. 5. Thus, the Service Center determined that Claimant was not disqualified from receiving UC benefits under Section 402(b) of the Law. *Id.*

Employer timely appealed to the Referee, who held an evidentiary hearing on March 6, 2019. Both Claimant and Employer appeared *pro se* and testified, and each presented one witness. Following the hearing, the Referee reversed the Service Center's decision and concluded as follows:

> [Claimant] voluntarily resigned her employment due to dissatisfaction with what the Claimant described as substantial changes to the employment agreement. Specifically, the Claimant contended that the Employer attempted to add additional household cleaning duties to her nanny assignment which were not previously part of the agreement and that said issue was the precipitating factor in her resignation.
>
> However, the Employer offered [into evidence] a [2017 A]greement which did list the same household cleaning duties. The Referee resolves this conflict in favor of the Employer that the Claimant had been performing said duties during her employment.
>
> In any case, the Claimant failed to act with ordinary common sense and make a good faith effort to preserve her employment by specifically identifying the problem she had with the [2019 A]greement to allow the Employer a reasonable opportunity to address the Claimant's concerns

prior to resigning her employment. The Claimant also failed to establish that doing so would have been futile.

Ref.'s Order, 3/13/19, at 3-4. Therefore, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(b) of the Law because she voluntarily quit without cause of necessitous and compelling nature.

Claimant timely appealed to the Board, which adopted and incorporated the Referee's Findings of Fact and Conclusions of Law and affirmed the Referee's decision. Claimant now petitions this Court for review.[4]

## Analysis

On appeal, Claimant asserts that she established a necessitous and compelling reason to quit her employment because the record shows that "[E]mployer arbitrarily and dramatically changed the scope of [Claimant's] duties and her pay structure." Claimant's Br. at 11. Specifically, she contends that the "drastic" change in her job duties, as well as the decrease in her pay, produced real and substantial pressure to terminate her employment. *Id.* at 12. We disagree.

A claimant who voluntarily terminates her employment has the burden to establish a necessitous and compelling reason for doing so. *Petrill v. Unemployment Comp. Bd. of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). The claimant must prove that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Brunswick*

---

[4] Our scope of review is limited to determining whether the necessary factual findings are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

*Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

A claimant's acceptance of a job creates a presumption that the job conditions are suitable. *Miller v. Unemployment Comp. Bd. of Review*, 580 A.2d 920, 921 (Pa. Cmwlth. 1990). However, a claimant can rebut the presumption of job suitability by proving either that she was deceived about, or was reasonably unaware of, the unsuitable conditions when she accepted the employment, or that a substantial, unilateral change in the employment agreement occurred after she accepted the job. *Id.* "[A] substantial[,] unilateral change in employment conditions renders the job unsuitable." *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998). The claimant must prove that the change was so unreasonable and burdensome that a reasonable person under such circumstances would have been compelled to quit. *Unangst v. Unemployment Comp. Bd. of Review*, 690 A.2d 1305, 1308 (Pa. Cmwlth. 1997).

In addition, when faced with a change in employment conditions, a claimant must make a reasonable effort to preserve her employment before voluntarily quitting. *Morgan v. Unemployment Comp. Bd. of Review*, 108 A.3d 181, 188 (Pa. Cmwlth. 2015) (*en banc*). The claimant must attempt a new position "to prove that the job modifications were unreasonable and rose to the level of circumstances which would compel a reasonable person to terminate employment." *Unangst*, 690 A.2d at 1308.

At the hearing, Claimant testified that she and Employer never discussed or reviewed an employment agreement when she began the position in 2017. N.T., 3/6/19, at 6, 8, 13. She also testified that, prior to 2019, she was not required to

perform cleaning or housekeeping duties and her duties were limited to those pertaining to caring for and cleaning up after Child. *Id.* at 10.

However, Employer's testimony and evidence directly contradicted Claimant's testimony. With regard to the 2017 Agreement, Employer testified:

> [Claimant and I] reviewed [the 2017 Agreement] together [i]n January of 2017. We went over it. You know, it was a very busy time. I had a new baby; starting a new job; working through all of the taxes and such for having an employee in my home. So, in the end, you know, we didn't end up signing it. Just missed it as a new [e]mployer. But, we had a handshake on it and as a result, [Claimant] gave me her identification, her driver's license, and agreed to start work under these agreements.
>
> . . . .
>
> . . . [W]e sa[t] down at the dining room table and went through the papers together. She told me . . . we checked off . . . which days that she wanted for paid holidays and how many sick leave days she wanted, how many weeks of vacation, talking about taking it all together; that's what she's done in the past with . . . families she's worked for.

*Id.* at 16. The Addendum to the 2017 Agreement provided that Claimant was responsible for, *inter alia*, unloading and loading the dishwasher; wiping down counters; sweeping; light mopping; picking up toys and cleaning Child's room; preparing family dinners and Child's meals and snacks; setting up the morning coffee; washing, drying, folding, and ironing laundry; carrying laundry up and down the stairs; and other miscellaneous light housekeeping duties. Bd.'s F.F. No. 3; R. Item No. 3, Ex. SC-11.

Claimant's own testimony was also inconsistent, as she testified that light housekeeping duties were part of her job throughout her employment. *Id.* at 12. When asked whether she and Employer had agreed "on dependent care and light

7

household duties . . . as part of the job," Claimant replied, "Yeah, *and I . . . kept the house cleaned up*." *Id.* (emphasis added). Claimant also testified that she objected to the newly created duties of doing all of the family's laundry, but she admitted that she "had been doing laundry since she started" working for Employer. *Id.* Further, in her telephone interview with the Department of Labor and Industry, the interviewer asked Claimant, "[W]hat were the new job duties [in the 2019 Agreement]?" to which Claimant replied, "[U]nload and load the dishwasher, every[]day. *[I] would do this prior to the contract*." R. Item No. 4 (emphasis added).

The Board resolved the conflicts in the evidence in Employer's favor and found that Claimant performed housekeeping and cleaning work for Employer throughout her employment. *See Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999) (stating that the Board is the ultimate factfinder in UC cases and is empowered to resolve conflicts in evidence, determine the weight to be accorded the evidence, and determine the credibility of witnesses). In fact, Claimant acknowledged that her household duties had increased throughout her employment with Employer. Claimant testified, "[T]here was just a lot of changes made *over the past couple of years and a lot of additional duties added on* that were not nanny-related duties. I'm not going to mop all her floors, change all her sheets, do all her laundry, take her trash out . . . make her dinner and watch her kid." N.T., 3/6/19, at 7. Yet even with these additional household duties, Claimant continued to work for Employer without objection until Employer presented her with the 2019 Agreement. *See Speck v. Unemployment Comp. Bd. of Review*, 680 A.2d 27, 30 (Pa. Cmwlth. 1996) (stating that "once an employee [has] accepted new terms of employment, it is presumed that the employment is suitable"); *see also Monaco v. Unemployment Comp. Bd. of Review*, 565 A.2d 127, 130 (Pa. 1989) ("Mere

8

dissatisfaction with wages or working conditions is not sufficient to establish necessary and compelling reasons to quit [one's] employment.").

Moreover, the Board found that Claimant's job responsibilities were substantially the same in both the 2017 and 2019 Agreements and, thus, the 2019 Agreement did not amount to a substantial change in Claimant's employment terms. Bd.'s F.F. Nos. 9, 10; *see* R. Item No. 3., Exs. SC-11, SC-13, SC-14. Claimant's new duties included changing the sheets in Employer's guest bedroom and putting Child down for a nap in his bed each day, which the Board found to be reasonable. Bd.'s F.F. No. 11; R. Item No. 3, Ex. SC-13. While the 2019 Agreement contained a wage reduction for conducting personal errands, it also included an overall pay increase, as well as a new bonus structure to incentivize Claimant's performance of specific tasks. Bd.'s F.F. No. 11; R. Item No. 3, Ex. SC-14.

Furthermore, even if Employer's 2019 Agreement amounted to a substantial change in Claimant's employment conditions, we conclude that Claimant failed to make a reasonable effort to preserve her employment before quitting. *See Morgan*, 108 A.3d at 188. The record shows that Claimant did not express any concerns she had about the new contract with Employer. Employer credibly testified, "[W]e read through, line by line of the contract. I asked [Claimant] if she had any questions and if it looked good. She said it looked good and asked to take it home." N.T., 3/6/19, at 20. Claimant also did not attempt to work under the new employment terms, but instead quit three hours after her meeting with Employer. Bd.'s F.F. Nos. 16-18. When asked if she communicated her concerns to Employer before quitting, Claimant replied, "No, and the reason is because I already kn[ew] there wouldn't have been any kind of a good solution to this. . . ." N.T., 3/6/19, at 27.

We agree with the Board that Claimant failed to prove that Employer made substantial or unreasonable changes to her employment conditions such that she was compelled to quit. Claimant also failed to make a reasonable effort to preserve her employment before quitting. Therefore, we conclude that Claimant failed to establish a necessitous and compelling reason to voluntarily quit her employment under Section 402(b) of the Law.

## **Conclusion**

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary E. Stead,                          :
                    Petitioner           :
                                         :
        v.                               :   No. 790 C.D. 2019
                                         :
Unemployment Compensation                :
Board of Review,                         :
                    Respondent           :

# **O R D E R**

AND NOW, this 7th day of February, 2020, the Order of the Unemployment Compensation Board of Review, dated May 24, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge