IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Shamere English, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 662 C.D. 2024 |
| | : | Submitted: May 6, 2025 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE STACY WALLACE, Judge
             HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  June 13, 2025


Shamere English (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board), affirming a Referee's decision denying unemployment compensation (UC) benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant was employed by Highmark West Virginia (Employer) as a full-time customer service advocate from July 24, 2018, to June 14, 2023.  Employer is responsible for answering customer calls regarding Medicare benefits.  The

─────────────

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law, provides in relevant part: "[A]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work . . . ."  43 P.S. §802(e).

Employer's calls are governed by "CMS" guidelines,[2] and Employer is required to meet CMS call standards. To ensure that the guidelines are being met, CMS has test callers call Employer's telephone system to confirm that customer service advocates are answering telephone calls within thirty seconds and responding to callers' questions. Referee's Decision, 10/25/2023, Findings of Fact (F.F.) Nos. 1-3.[3]

Claimant had a history of not meeting quarterly criteria guidelines for telephone calls she was to answer. Claimant and the manager of customer service, Amanda Cooper (Manager), had discussed Claimant not meeting guidelines and Claimant was provided with a new telephone system to make sure there were "no glitches or outages." Referee's Decision, F.F. No. 4. After receiving the new telephone system, Claimant experienced little to no issues with her telephone. *Id.*

Manager continued to review Claimant's calls in two-week period blocks to ensure that Claimant was meeting the guidelines. During the review, Manager found a call from a CMS test caller in which the phone was picked up, but Claimant did not respond to any questions. "The CMS test caller repeated, 'Hello, Hello?' before disconnecting the call." Referee's Decision, F.F. No. 5.

The unanswered test call prompted Manager to review more of Claimant's telephone calls going back a period of two weeks. Manager found that Claimant had failed to answer 16 telephone calls, including both test calls and calls from members. Referee's Decision, F.F. No. 6.

Employer has a zero tolerance "call avoidance" policy that calls for termination upon a first offense. Referee's Decision, F.F. No. 7. Manager met with

---

[2] The Certified Record does not contain a definition of "CMS." Per the Board, "CMS" appears to refer to the Centers for Medicare & Medicaid Services. *See* https://www.cms.gov/ (last visited June 12, 2025).

[3] The Referee's Determination can be found in the Certified Record (C.R.) at No. 10.

Claimant on June 12, 2023, and provided dates that Claimant had failed to answer the telephone over a two-week period. Manager offered Claimant the opportunity to explain why there were 16 instances of call avoidance during the 2-week period. Claimant was unable to provide any reason why the call avoidance occurred. Manager also offered Claimant the opportunity to notify her of any issues Claimant may have found to explain the missed calls. Manager did not receive any additional explanation from Claimant. Claimant was terminated on June 14, 2023, due to a violation of Employer's call avoidance policy. *Id.*, F.F. Nos. 8-10.

Claimant filed an application for UC benefits, but the UC Service Center found her not eligible under Section 402(e) of the Law. Certified Record (C.R.) at No. 3. Claimant appealed and, following a hearing, the Referee affirmed.

The Referee noted that

> the Pennsylvania [c]ourts have consistently held that the deliberate violation of an employer's policies or rules will generally constitute willful misconduct in connection with the work, provided the employer provides competent evidence to establish the existence of its policy and that fact of its violation. Once the employer has proven both the existence of its policy and the fact of its violation, the burden then shifts to the claimant to establish either good cause for violating the employer's policy and/or that the policy is unreasonable, or that the policy is not fairly enforced or uniformly applied.

Referee's Decision at 2. Here, the Referee determined that Employer provided credible testimony of a zero tolerance policy for call avoidance. Manager's testimony reflected that because of Claimant's history of failing to meet guidelines related to the proper answering of telephone calls, Manager continued to monitor Claimant's calls, finding 16 instances of call avoidance in a two-week period. Manager explained that in these instances, Claimant's phone was in ready mode, the

3

telephone call was picked up, but Claimant neither spoke nor answered the caller's questions. Manager also testified there was no record that Claimant had reported any computer outages or system glitches within the two-week period to justify the call avoidance. *Id.* at 3.

The Referee acknowledged that during the June 12, 2023 meeting with Manager, Claimant was advised of the missed or avoided calls and was given an opportunity to offer any reasons why this may have occurred. Claimant was unable to provide any reasons at the meeting and was advised that "if [Claimant] thought of anything that may have caused the call avoidance, she should notify [ ] Employer immediately." Referee's Decision at 3. While Claimant testified that because of the volume of calls she was not able to "properly perform an investigation into her missed calls to determine whether there had been any system or internet issues as the root cause[,]" Claimant nevertheless admitted that she did not request any time off from her duties to look into the matter and indicated that she did not have time after her work shift to perform such a search. *Id.*

The Referee noted that when Claimant filed her application for UC benefits, Claimant indicated that she was the caregiver for her disabled husband, which had caused her to miss telephone calls when she was caring for him.[4] The Referee observed, however, that "Claimant was on company time, being paid by [ ] Employer[] when the calls were missed, [ ] had not made any formal requests for [Family and Medical Leave Act (FMLA)[5]] time[,] and did not notify [Manager] that

---

[4] *See* Claimant's Unsatisfactory Work Performance Questionnaire, 6/26/2023, C.R. at No. 2 ("I have a disabled husband[,] so I missed a few calls to tend to him.").

[5] 29 U.S.C. §§2601-2654. Claimant testified that while she was covered by the FMLA and that Employer had previously given her "a lot of time through [the] FMLA[,]" she did not request FMLA leave for any of the instances of call avoidance. C.R. at No. 9, Notes of Testimony, page 12.

4

she needed to log off the phone to provide her husband with care." Referee's Decision at 3. Thus, the Referee found that Claimant did not provide good cause for missing 16 calls in a two-week period and that "it [was] highly probable that [] Claimant was being disrupted from performing her job by trying to care for her disabled husband." *Id.* The Referee stated:

> While [this] Referee sympathizes with [ ] Claimant's responsibilities to her disabled husband, [this] Referee does not find it to be the responsibility of [ ] Employer to pay [ ] Claimant a wage while [ ] Claimant fails to perform the basic essentials of [her] job in order to provide her husband with care. [This] Referee also finds that [ ] Claimant has provided no good reason for violating [] Employer's call avoidance policy, and that [ ] Employer has met [its] burden of establishing willful misconduct. Consequently, benefits are denied under Section 402(e) of the Law.

*Id.*

Claimant appealed and the Board affirmed, adopting and incorporating the Referee's findings and conclusions and upholding the Referee's credibility determinations. Claimant now appeals to this Court.[6]

At the outset, we note that in UC matters, the Board is the ultimate finder of fact, such that "[f]indings made by the Board are conclusive and binding on appeal if the record, when examined as whole, contains substantial evidence to support those findings." *Kelly v. Unemployment Compensation Board of Review*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001). Substantial evidence is a low bar; it need only be "relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *American General Life and Accident Insurance Company v.*

---

[6] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

5

*Unemployment Compensation Board of Review*, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994). Finally, "[t]his Court is bound 'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the Board's findings." *Morgan v. Unemployment Compensation Board of Review*, 108 A.3d 181, 185 (Pa. Cmwlth. 2015) (citing *United States Banknote Company v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990)).

Under Section 402(e) of the Law, a claimant is ineligible to receive benefits "for any week . . . [i]n which [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work." 43 P.S. §802(e). As this Court has explained:

> Although willful misconduct is not defined by statute, it has been described as: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of [work] rules; (3) the disregard of standards of behavior that an employer can rightfully expect from his employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 606-07 (Pa. Cmwlth. 2011) (citations omitted). "This Court has stated that 'if the conduct clearly discloses breaches of duties and obligations which are inimical to the employer's best interests, such acts on the part of the employee may constitute willful misconduct.'" *Erying v. Unemployment Compensation Board of Review*, 407 A.2d 86, 87 (Pa. Cmwlth. 1979) (quoting *Loder v. Unemployment Compensation Board of Review*, 296 A.2d 297, 300 (Pa. Cmwlth. 1972)).

6

Initially, the employer bears the burden of establishing willful misconduct. *Chapman*, 20 A.3d at 607. If an employer has discharged a claimant for violating a work rule, the employer must establish the existence of the rule, the claimant's awareness of the rule, its reasonableness, and "the fact of its violation[.]" *Id*. If the employer is successful in meeting its burden, the burden then shifts to the claimant to demonstrate that she had good cause for her actions, which is satisfied when "her actions are justified or reasonable under the circumstances." *Id*.

Claimant first argues that Employer failed to meet its burden of establishing willful misconduct because it did not show that Claimant intentionally violated any policy or engaged in misconduct. Per Claimant, "Employer [ ] failed to show that [Claimant] violated a policy, let alone intentionally violated it." Claimant's Brief at 14. Claimant maintains that "[o]ther than a blanke[t] assertion of 'call avoidance' and 'personal conduct policies' there was no proof provided at the hearing of any actual policy." *Id.*

Claimant further argues that there was no first-hand testimony that Claimant violated any policy. Claimant points out that "[t]he original issue was brought to [ ] Employer's attention through a third party, CMS[,]" but that Employer's witness, i.e., Manager, "did not have any first-hand knowledge regarding the underlying incident that led to them reviewing [Claimant's] call history." Claimant's Brief at 14. Claimant reasons, therefore, that the finding of willful misconduct was improperly based solely on hearsay evidence. Although Employer did conduct a review of Claimant's call history "after receiving the hearsay information from CMS[,]" Claimant asserts that Employer failed to provide any evidence reflecting that Claimant avoided telephone calls or acted against

7

personal conduct policies. *Id.* at 15. Accordingly, there can be no finding of willful misconduct.

Finally, Claimant contends that she was not given sufficient time to investigate Employer's allegations before she was terminated. Claimant maintains that following her June 12, 2023 meeting with Manager, Claimant attempted to gather information but was unable to do so given the high volume of calls. Claimant further asserts she was unable to look into the allegations after work hours because "the system will not allow you in after a certain amount of time." Claimant's Brief at 16. Based on these circumstances, Claimant argues that Employer terminated her without confirming the validity of the accusations.

The Board responds that Manager testified as a "first[-]hand" witness. Board's Brief at 7. Manager testified to Employer's zero tolerance policy, Claimant's knowledge of the policy and Claimant's violation of the policy. In this regard, testimony alone can establish an employer's policy. *Chapman*, 20 A.3d at 608-09; *W-M. v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1817 C.D. 2017, filed January 9, 2019), slip op. at 9.[7] Moreover, Claimant never disputed the existence of the policy at the Referee hearing or on appeal to the Board. In fact, Claimant admitted that she was previously warned about missing calls.

To the extent Claimant asserts that the finding of willful misconduct is based on hearsay testimony, the Board points out that Claimant had a history of not meeting the CMS telephone guidelines and that was the reason for Manager's investigation. Finally, as to Claimant's assertions that she did not have sufficient

---

[7] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

8

time to research Employer's allegations, the Board notes that Claimant was given two days to take action prior to her termination and that she never requested time off from her job duties in order to investigate Employer's allegations.

The Board maintains that although Employer carried its *prima facie* burden, Claimant failed to show she had good cause for her violations. The Board emphasizes that Claimant did not indicate that she missed calls to tend to her disabled husband until the Referee referenced her statement in the Unsatisfactory Work Performance Questionnaire. While Claimant went on to testify that she had approved FMLA leave to care for her husband, she acknowledged that she did not request FMLA leave for any of the instances of call avoidance.

Based on our review of the record, we believe substantial evidence supports the Board's conclusion that Claimant was not entitled to UC benefits under Section 402(e) of the Law. Manager credibly testified that Employer had a zero tolerance policy for call avoidance, that Claimant was aware of the policy, and that Manager discovered 16 instances where Claimant avoided calls during a two-week period. It is of no moment what precipitated Employer's investigation into Claimant's work behavior. Manager's uncontradicted, credible, first-hand testimony reflects that Claimant violated Employer's policy and we are bound by this credibility determination on appeal. *See, e.g.*, *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (questions of credibility and resolution of evidentiary conflicts are within the sound discretion of the Board and are not subject to re-evaluation on judicial review).[8]

---

[8] Regardless, the record reflects that Claimant did not raise the hearsay issue before the Referee; thus, the issue was waived. *See Watkins v. Unemployment Compensation Board of Review*, 751 A.2d 1224, 1226 (Pa. Cmwlth. 2000) (unemployment compensation claimant waives review of an issue by neglecting to raise and preserve it before the referee).

9

We similarly reject Claimant's argument that she was not given sufficient time to investigate Employer's call avoidance allegations prior to her termination. The record reflects that Claimant was given two days to gather information. Furthermore, the record does not demonstrate that Claimant requested additional time to gather information concerning the reasons for her call avoidance or, for that matter, that Claimant asked to take time away from her work duties to complete her inquiry. Under the circumstances, we cannot say that the Board erred in rejecting this argument.

Because substantial evidence supports the Board's findings that Claimant committed willful misconduct by violating Employer's zero tolerance call avoidance policy, the order of the Board must be affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shamere English, : 
                          : 
               Petitioner : 
                          : 
           v. : No. 662 C.D. 2024
                          : 
Unemployment Compensation : 
Board of Review, : 
                          : 
              Respondent : 

## O R D E R

AND NOW, this 13th day of June, 2025, the March 7, 2024 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge