*403 OPINION BY
JUDGE COHN JUBELIRER
St. Clair Hospital (Employer) petitions for review of the November 18, 2015, Order of the Unemployment Compensation Board of Review (Board) reversing the Decision of a Referee to deny Katherine A. Johnson (Claimant) unemployment compensation (UC) benefits. The Board concluded that Claimant was not barred from receiving UC benefits by Section 402(b) of the Unemployment Compensation Law (UC Law)[1] because she established a necessitous and compelling reason for voluntarily terminating her employment. Because we conclude that Claimant did not take all reasonable and necessary steps to preserve her employment, we reverse.
Claimant worked for Employer as a part-time communications specialist from November 26, 2012 until June 10, 2015. (Board Decision, Findings of Fact (FOF) ¶ 1.) Claimant’s position is staffed at all times during the day and night. (Id. ¶ 3.) Until January 2015, Claimant only worked during the day and a co-worker assumed the night shift. (Id.) After the co-worker left her employment in January 2015, Employer informed Claimant and the other “employees that they would be required to rotate working the night shift so that no one employee had to be on night shift for an extended period of time.” (Id. ¶4.) Claimant requested that she not be scheduled for night shifts and provided Employer with documentation from her physicians on a medical condition that precluded her from working the night shift.' (Id. ¶ 5.) Thereafter, Employer informed Claimant that it would “not provide accommodations of any kind,” (Id, ¶ 6.)
Claimant continued to request an accommodation so that she could remain in her position working only the day shift. (Id ¶ 7.) On April 15, 2015, Employer’s human resources department emailed Claimant a list of 132 open positions with Employer that would not require Claimant to work night shifts. (Id. ¶8; R.R. at 48a-51a.) Employer asked Claimant to look at the list of open positions and told Claimant that it would be happy to discuss which ones do not require night shifts. (R.R. at 47a.) Employer also told Claimant where to find the job descriptions, and that Claimant should call human resources with any questions. (Id.) Claimant did not call. (FOF ¶ 11.) Employer repeatedly sent Claimant letters asking her to call and subsequently specified two jobs from the larger list of openings for which it appeared that Claimant could be qualified, would not include night shifts, and had a comparable compensation rate to Claimant’s current position. (Id. ¶¶ 9-10; R.R. 62a-63a.) Although Claimant applied for a position that was not on the list and for which she was not qualified, Claimant did not call human resources or apply for any of the open positions identified by Employer. (FOF ¶¶ 7, 11.) Claimant resigned from her position on June 10, 2015. (Id. ¶ 11.)
Claimant filed a claim for UC benefits, which the Local UC Service Center granted under Section 401(d)(1) of the UC Law, 43 P.S. §'801(d)(1),[2] and Section 402(b) of the same. Employer appealed. After a hearing held on July 29, 2015, the Referee concluded that Claimant was not ineligible *404 for UC benefits under Section 401(d)(1), but ineligible under Section 402(b) of the UC Law because Claimant quit her employment without contacting Employer about available positions. (Referee Decision at 2-3.)
Claimant appealed to the Board. The Board reversed, concluding that Claimant was not ineligible for benefits under Section 402(b) of the UC Law because:
There is no dispute that, at the time of her separation, [Claimant had adequate health reasons to justify quitting, that she informed [Ejmployer of her health-related problem, and that she requested an accommodation. There is also no dispute that [Ejmployer repeatedly informed [Cjlaimant that it would not accommodate her request not to work the night shift because it was considered an essential function of her position. [Ejm-ployer did not give [Cjlaimant a firm offer of other alternative employment that would not require her to work the night shift. Rather, [Ejmployer only presented [Cjlaimant with other opportunities that [Cjlaimant may have been qualified for and that [Cjlaimant could apply for that would not require her to work at night. Thus, because a firm offer of alternative employment was not given to [Cjlaimant, and [Cjlaimant had adequate health reasons for quitting that [Ejm-ployer knew about, she had a necessitous and compelling reason for quitting.
(Board Decision at 3.) This appeal follows.
On appeal,[3] Employer argues that the Board erred in determining that Claimant had a necessitous and compelling reason for voluntarily terminating her employment because Claimant did not take all necessary and reasonable steps to preserve her employment. Employer further argues that the Board misapplied the “firm offer” doctrine as used in this Court’s UC jurisprudence by justifying its award of benefits based on its determination that Employer did not give Claimant a “firm offer.”
Section 402(b) of the UC Law provides, in relevant part:
An employe shall be ineligible for compensation for any week — ... (b) In which h[er] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in “employment” as defined in this act: Provided, That a voluntary leaving work because of a disability if the employer is able to provide other suitable work, shall be deemed not a cause of a necessitous and compelling nature[.j
43 P.S. § 802(b) (emphasis added). The claimant has the burden of proving that she had a necessitous and compelling cause for voluntarily terminating her employment. PECO Energy Co. v. Unemployment Comp. Bd. of Review, 682 A.2d 58, 60 (Pa. Cmwlth. 1996). A necessitous and compelling cause is that which “results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.” Taylor v. Unemployment Comp. Bd. of Review, 474 Pa. 351, 378 A.2d 829, 832-33 (1977). To meet this burden, the claimant must generally demonstrate that she took “all necessary and reasonable steps to pre *405 serve the employment relationship.” PECO Energy Co., 682 A.2d at 61.
Employer and the Board disagree as to the steps an employee and employer must take to preserve the employment relationship in a medical condition case. In general, a medical condition that limits an employee’s ability to perform work duties can provide a necessitous and compelling reason to quit one’s' employment. Genetin v. Unemployment Comp. Bd. of Review, 499 Pa. 125, 451 A.2d 1353, 1355 (1982). Yet, “since it was not the intent of the [UC Law] to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force” an employee who voluntarily leaves employment may receive UC benefits only if the employee is able to work and available for suitable work. Id In such situations, the employee is obliged to communicate his or her medical problem to the employer, but is not required to attempt “to initiate or effectuate the transfer to more suitable work.” Id. at 1356. Thus, to establish that a medical condition is a necessitous and compelling reason for the voluntary termination of one’s employment, a claimant must: (1) establish, through competent evidence, the existence of a medical condition; (2) inform the employer of the condition; and (3) be able and available to work if a reasonable accommodation can be made. Id. Further, it is not necessitous and compelling if “the employer is able to provide other-suitable work.” 43 P.S. § 802(b).
Employer relies on this Court’s decision in Nolan v. Unemployment Compensation Board of Review, 797 A.2d 1042 (Pa. Cmwlth. 2002), to support its position that employees who are limited by a medical condition must remain proactive and take all reasonable and necessary steps to preserve the employment relationship.[4] In Nolan, the claimant was employed with the Pennsylvania Liquor Control Board (PLCB) when she aggravated a pre-exist-ing medical condition that prevented her from fully performing her duties. Id. at 1044. After receiving notice of her condition, PLCB told the claimant that she “must retire from [her] position.” M. (internal quotation marks omitted). The claimant was also informed that should she wish to pursue other employment with the Commonwealth, the State Civil Service Commission (Commission) would assist her, but that she first must complete a Civil Service Application. Id. The claimant did not complete an application or contact the Commission. Id. at 1045.
The claimant applied for UC benefits, which were granted by the Office of Employment Security “on the basis that there were no positions that could accommodate the limitations caused by her medical condition.” Id. The employer appealed. After a hearing, a referee determined that she was ineligible for benefits under Section 402(b) because she voluntarily left her employment. Id. The Board affirmed and so did this Court. Notwithstanding the fact that PLCB required the claimant to retire from her current position, we concluded that PLCB offered the claimant a reasonable accommodation by presenting the claimant with other employment opportunities within the Commonwealth. Id. at 1046. “By electing not to complete the civil service application, [c]laimant foreclosed the possibility that she could remain employed by the Commonwealth, thus failing to take all *406 reasonable and necessary steps to preserve her employment.” Id. Although there was not a firm offer, we said that “the fact that a job is not guaranteed does not amount to cause of a necessitous and compelling nature to justify a quit.” Id.
The Board’s argument in response relies exclusively on the Pennsylvania Supreme Court’s decision in Genetin. The claimant in Genetin was employed as a truck driver when he took a leave of absence due to his medical condition. Genetin, 451 A.2d at 1354. The claimant was unable to resume his duties as a truck driver and 'was assigned to a position as a sweeper. Id. The claimant voluntarily terminated his employment and applied for UC benefits. Id. A referee found the claimant ineligible for benefits based on a determination that the claimant failed to show cause of a necessitous and compelling nature. Id. The Board and this Court affirmed.
On appeal to the Supreme Court, the Supreme Court defined the question as: “what is required of an employee who elects to terminate employment for health reasons if he wishes to maintain entitlement to unemployment compensation benefits.” Id. The Supreme. Court noted that this Court’s precedent at the time held that an employee “must attempt to initiate or effectuate the transfer to more suitable work” if she is to be eligible for benefits. Id. at 1356. It was this “unwarranted imposition of responsibility upon the employee” that led the Supreme Court to reverse. Id. The Supreme Court reasoned that “[t]he availability of an employment position, the duties expected to be performed by one serving in that capacity, and the desirability of that individual for service in that capacity are managerial judgments over which the employee has no control.” Id. The Supreme Court viewed this Court’s insistence that an “employee[ ] initiative] the quest for an alternative position” as “a meaningless ritual that does not further the objectives of the [UC Law].” Id. Because the Board did not assess whether the employer offered the claimant suitable work in light of the claimant’s medical condition, the Supreme Court remanded the matter for additional fact finding. Id. Yet, the Supreme Court further noted that “in the event such an opportunity was proposed to [a claimant] and he declined to avail himself of it, a finding of ineligibility under section 402(b)(1) would then be appropriate.” Id. Thus, the Court recognized that a claimant cannot decline to take reasonable steps to preserve her employment.
Genetin stands for the proposition that an employee who can no longer perform his or her duties due to a medical condition need not “initiate the quest” for a more suitable position. Id. at 1356. Yet, neither Genetin, nor any other binding case interpreting Section 402(b) of the UC Law, requires employers to present to the employee a firm offer of employment in an alternative position. After the employer initiates the quest and proposes an opportunity for suitable alternative employment, the employee with the medical condition cannot simply sit on her hands. As is required in unemployment compensation cases, to receive benefits, an employee must “take all necessary and reasonable steps to preserve the employment relationship.” Nolan, 797 A.2d at 1046. Like in Nolan, Claimant here was forced to leave her position because Employer would not make an accommodation for her medical condition. Also like Nolan, Claimant was not required to initiate a quest for an alternative position with Employer, but was presented by Employer with a proposal, consisting of alternative options along with an action that was necessary to preserve her employment; in Nolan, to fill out an. application, here, to call human re *407 sources. Claimant failed to take any meaningful step to preserve her employment, thus foreclosing the possibility of remaining employed. After being presented with two positions with comparable salary, Claimant simply was asked to call Employer’s human resources department to discuss, and she did not.
The Board would like us to distinguish Nolan because, in Nolan, PLCB would have identified the positions for which claimant was qualified, if the claimant had submitted an application, and here, Employer required Claimant to identify the positions. We disagree. While Employer initially asked Claimant to look at the positions listed, Employer stated that it would be happy to discuss the positions, and followed-up with Claimant by identifying two specific positions that appeared to meet her qualifications. (R.R. at 47a, 62a-63a.) Thus, Employer initiated the quest for a more suitable position, identified two positions within Claimant’s qualifications, and signaled to Claimant its willingness to enter into a collaborative process to discover the most suitable position. (R.R. at 62a-63a.) By choosing to not even call Employer after it identified the two positions, Claimant did not take all reasonable and necessary steps to preserve her employment and, therefore, did not meet her burden of proving that she had cause of a necessitous and compelling reason to leave her employment.
Accordingly, we conclude that Claimant is ineligible for UC benefits pursuant to Section 402(b) of the UC Law and reverse the Order of the Board.
ORDER
NOW, February 2, 2017, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby REVERSED.

. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b).

. Section 401(d)(1) of the UC Law provides, in relevant part:
Compensation shall be payable to any employe who is or becomes unemployed, and who—
[[Image here]]
(d)(1) Is able to work and available for suitable work ...
43 P.S. § 801(d)(1).

. This Court’s scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

. Employer also relies upon this Court’s decisions in PECO Energy Co. and Teti v. Unemployment Compensation Board of Review, 2014 WL 5316626 (Pa. Cmwlth., No. 2369 C.D. 2013, filed Oct. 17, 2014), to support its position. Because neither case involves an employee who voluntarily left her employment due to a medical condition, these cases are neither applicable nor persuasive.