IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ryan Kuck, : 
          Petitioner : 
           : 
           : 
          v. : 
           : 
           : 
Unemployment Compensation : 
Board of Review, : No. 862 C.D. 2019
          Respondent : Submitted: March 24, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge (P.)
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: May 12, 2020

Ryan Kuck (Claimant) petitions for review from the May 22, 2019 decision of the Unemployment Compensation Board of Review (Board) that affirmed the Referee's decision finding Claimant ineligible for unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law).[1] The Referee concluded that Claimant's decision to leave his employment was personal rather than necessitous and compelling. Upon review, we affirm.

Greensgrow Philadelphia Project (Employer) is a non-profit organization located in Philadelphia, Pennsylvania, that operates a farm that

---

[1] Section 402(b) of the Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ."

provides fresh food to Philadelphians, as well as garden centers that sell plants, trees and shrubs. Certified Record (C.R.) Item No. 9, Transcript of Testimony (T.T.), 4/1/19 at 5. Employer relies on the funds it receives from grants and sales to maintain operations. C.R. Item No. 10, Referee's Decision/Order mailed 4/2/19, Findings of Fact (F.F.___) 2; T.T. 5. Employer employed Claimant from May 1, 2006 through December 31, 2018. F.F. 1. Initially, Claimant was a project manager for Employer responsible to obtain grants, but in 2016, he accepted the role of executive director. F.F. 3-4; T.T. 5. As executive director, Claimant earned $70,000 per year,[2] F.F. 1, and he was responsible for all pay and hiring decisions for Employer. T.T. 3.

When Claimant accepted the position as executive director, there were financial challenges facing the organization. T.T. 5. To increase operating revenue, Claimant decided that Employer had to focus on sales rather than rely on grants. F.F. 5; T.T. 5. In the spring of 2018, Claimant hired a new employee, Megan DeBrito (DeBrito), to operate the garden centers, or sales side, at $60,000 per year. T.T. 6.

In August 2018, Employer had a debt that "came due" which forced Employer to do an "immediate" restructuring to focus on sales and required Claimant to lay off some employees. T.T. 6. Additionally, in September 2018, Employer received notice that it was denied a large federal grant. *Id*. at 8. Claimant explained that had Employer received this grant, he would have "stayed on and managed that project." *Id*. When the grant was denied, Claimant stated that it "no longer made sense to have somebody running the business [DeBrito] and [to have] a non-profit director at the same time." *Id*. In November 2018, Claimant decided

---

[2] Claimant testified that he was hired at a rate of $75,000, but he took a voluntary pay decrease in 2017. T.T. 3.

not to take pay because Employer was "out of cash" and he wanted to allow other employees, who were paid much less, to receive a paycheck. *Id*. at 10. On November 13, 2018, Claimant submitted his resignation to the Board of Directors, via email, effective December 31, 2018. F.F. 7-8; T.T. 4.

On January 1, 2019, Claimant applied for unemployment compensation benefits. *See* Claimant Internet Initial Claims. On February 28, 2019, the Erie Unemployment Compensation Service Center (Center) issued a notice of determination denying Claimant benefits. C.R. Item No. 5, Notice of Determination. Claimant timely appealed the determination to the Referee. C.R. Item No. 6, Claimant's Petition for Appeal. On April 1, 2019, the Referee held a hearing on the matter.

Though Employer did not appear at the hearing, Employer indicated on Employer's Request for Separation and Wage Information form that Claimant "quit after [the] birth of his child." C.R. Item No. 3, Employer's Request for Separation and Wage Information at 1. Employer also stated in its Employer Questionnaire that Claimant quit for "[p]ersonal [r]easons" as he "decided it would be best for the organization if he stepped down [and] made room for new leadership." C.R. Item No. 3, Employer Questionnaire at 4.

Claimant testified that he resigned because Employer no longer needed an executive director with his experience. T.T. 6-7. Claimant testified that he never operated a garden center and does not possess knowledge of plants. *Id*. at 6. Claimant further explained:

> [N]ot only was the pay change different when we effected this transition in December or throughout December, but also the nature of the organization, the responsibilities for that leadership role were going to be—it wasn't going to be grants focused anymore or food focused, it was going

3

to be garden center and business line focused which, again, someone else is better suited for.

*Id*. at 6-7. Claimant also explained that he had no intention of leaving, but the organization could not afford to keep him. *Id*. at 9.

Claimant indicated that his options to remain with the organization were limited. Specifically, Claimant testified that he could have accepted a position with the organization as facilities manager for $35,000, but that position would not be "intellectually stimulating" and the pay would not suffice. *Id*. at 6-7. Claimant indicated he could have tried to raise additional funds, but he had been trying that for two years and was unable to obtain the grant that would have continued the food program for another three years. *Id*. at 7-8. Claimant testified that he discussed with DeBrito the possibility of having two leaders at once and paying Claimant $60,000 or $70,000, while paying DeBrito similarly, but it was not a feasible plan because Employer could not afford another $70,000 salary. *Id*. at 11. At the hearing, Claimant offered a letter from DeBrito dated March 15, 2019, wherein she explained:

> I am writing to inform you that in 2019 [Employer] began restructuring its model and to this end [Claimant's] skill set was not fully relevant to the new needs of the [e]xecutive [d]irector position. At the time we could not afford to retain his services in another role at the organization, we exhausted all possibilities of these options.

*See* T.T., Claimant's Exhibit 1. Finally, Claimant denied he was offered a position as a part-time, independent contractor grant person while he was still employed and maintained that this option was discussed only after Claimant resigned. T.T. 12.

4

Following the hearing, the Referee affirmed the Center's determination. In so concluding, the Referee credited Claimant's testimony entirely but did not find that Claimant "established that his decision to leave the employment was necessitous and compelling." Referee's Decision/Order at 3. The Referee explained:

> While the Referee understands the Claimant's testimony that it was his belief that his resignation would be in the best interest of the organization, the Referee finds that there is not competent evidence in the record to establish that the Claimant exhausted all options available.
>
> Indeed, the organization has hired new individuals in different management roles, and the Referee is not convinced that the Claimant was unable to perform different roles within the organization. Therefore, the Referee finds that the Claimant's decision to leave the employment was personal in nature, and not necessitous and compelling for the purposes of Section 402(b) of the [Law].

*Id.* Claimant appealed the Referee's decision to the Board, which affirmed. C.R. Item No. 13, Board's Decision dated 5/22/19 at 1. The Board adopted and incorporated the Referee's findings and conclusions. *Id.* The Board also noted that at the hearing, Claimant acknowledged Employer explored adding him as a part-time grant manager after he left his employment, and, based on this acknowledgment, agreed with the Referee's determination that Claimant failed to demonstrate that he had no alternative but to leave his employment. *Id.* Claimant petitioned this Court for review.[3]

---

[3] This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *St. Clair Hosp. v. Unemployment Comp. Bd. of Review*, 154 A.3d 401, 404 n.3 (Pa. Cmwlth. 2017).

Claimant argues on appeal to this Court that he should be deemed eligible for benefits because there is no allegation that he engaged in any misconduct pursuant to Section 402(e) of the Law and/or that he was laid off in a "qualifying separation" or for "downsizing." Claimant's Brief at 11-12 & 15-16. Claimant, however, waived these issues for failure to raise them before the Board. Board's Brief at 9 n.3. *See* Pa.R.A.P. 1551 ("[n]o question shall be heard or considered by the court which was not raised before the government unit"); *Schneider v. Unemployment Comp. Bd. of Review*, 523 A.2d 1202, 1204 (Pa. Cmwlth. 1987) (explaining that issue is waived if claimant "failed to raise th[e] issue before the Board and attempts to assert it for the first time on appeal to this Court").

Claimant properly preserved a single issue for our consideration, *i.e.*, that he had a necessitous and compelling reason to quit because Employer "no longer had money to pay his salary." Claimant's Brief at 14. As executive director, Claimant asserts that he was in a "unique situation" and states:

> If an employee's boss appears to them [sic] and informs the employee that they [sic] are no longer going to [get] paid a salary but they [sic] are not being terminated, it would be reasonable for that employee to quit. [Claimant] was the sole decision maker in the organization. He was, at the time, acting as [e]mployer and [e]mployee. As the [e]mployer, he made the determination that the organization could no longer pay the [e]xecutive [d]irector salary. As [e]mployee, he made the decision to end his employment because of this.

*Id*. at 14-15. Claimant asserts that he and his colleagues contemplated "multiple alternatives" to keep him employed but "no alternatives were viable." *Id*. at 15. Further, Claimant challenged the Board's reliance on his testimony that Employer "explored adding him as a part-time grant manager after he left his employment" to

6

support its conclusion that he was ineligible for benefits because this option was not viable at the time of his separation and no position has since been added. *Id.*

When evaluating whether a claimant is eligible for unemployment compensation benefits, we must be mindful that the overarching purpose of the Law is to "aid those who through no fault of their own become unemployed." Section 3 of the Law, 43 P.S. § 752; *Schechter v. Unemployment Comp. Bd. of Review*, 491 A.2d 938, 940 (Pa. Cmwlth. 1985). Our Supreme Court has directed us to consider the purpose of the Law when considering eligibility for benefits under any section of the Law. *Preservation Pa. v. Unemployment Comp. Bd. of Review*, 673 A.2d 1044, 1046 (Pa. Cmwlth. 1996) (citing *Gillins v. Unemployment Comp. Bd. of Review*, 633 A.2d 1150 (Pa. 1993)). For this reason, where an employee without action by his employer quits work, the employee's action is considered voluntary under the Law and the employee is ineligible for benefits. *Spadaro v. Unemployment Comp. Bd. of Review*, 850 A.2d 855, 859 (Pa. Cmwlth. 2004) (citing *Charles v. Unemployment Comp. Bd. of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989)); *Ryan v. Unemployment Comp. Bd. Review*, 448 A.2d 713, 714 (Pa. Cmwlth. 1982).

However, in cases where the employee or claimant asserts that he quit his employment, an employee or claimant may still be eligible for benefits if he meets his burden of showing that he had a necessitous and compelling reason to quit under Section 402(b) of the Law. *St. Clair Hosp. v. Unemployment Comp. Bd. of Review*, 154 A.3d 401, 404 (Pa. Cmwlth. 2017); *Spadaro*, 850 A.2d at 859. To meet his burden, the claimant must produce evidence showing that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a

7

reasonable effort to preserve his employment. *See Morgan v. Unemployment Comp. Bd. of Review*, 108 A.3d 181, 188 (Pa. Cmwlth. 2015). Whether a claimant had a necessitous and compelling reason for quitting his job is a legal conclusion and is fully reviewable by this Court. *Id.* With these principles in mind, we now consider Claimant's argument.

Here, Claimant argues that he had a necessitous and compelling reason to quit work because Employer had no funds and could no longer pay his salary. Claimant's Brief at 15. However, Claimant was the executive director for Employer and his job was to make "*all* the pay and hiring decisions." T.T. 3. Claimant testified that he made the decision not to take a salary in November 2018 because Employer was "out of cash" and this decision allowed other employees, who were paid much less, to keep getting paid. *Id*. at 10. While Claimant's decision was considerate of the lesser paid employees, he made the decision not to pay himself and he had the authority to make all pay and hiring decisions. *See Schechter*, 491 A.2d at 940 (explaining that to ascertain eligibility for benefits, a determination must be made whether the employee's decision to quit was necessitated by actions beyond the employee's control to render him eligible for benefits or whether the decision was based on "purely personal preference" to render him ineligible for benefits); *see also Preservation Pa.*, 673 A.2d at 1046. Claimant further made the decision to resign from his employment. These decisions by Claimant, which evidence a "purely personal preference" on his part, render him ineligible for benefits. *Schechter*, 491 A.2d at 490.

In this regard, Claimant did not show that he made a reasonable effort to preserve his employment. *Morgan*, 108 A.3d at 188. In his resignation email to the Board of Directors, Claimant stated that "I will be stepping down as [e]xecutive

8

[d]irector at the end of the year."[4]  Claimant provided to the Board of Directors a future "management proposal" for Employer to consider in his resignation email. Claimant nominated two employees that could act as co-directors and represented that these changes were financially "achievable."  C.R. Item No. 3 Employer Separation Information, Email from Claimant to the Board of Directors dated

---

[4] Claimant's resignation email to the Board of Directors provided as follows:

Thank you for your support of [Employer] and your continued dedication to our success.

As mentioned at the meeting today I will be stepping down as [e]xecutive [d]irector at the end of the year.  It has been an incredibly challenging and rewarding two years, and I am proud of how we as a team weathered the emotional and financial turmoil left behind following Mary's death to keep the farm afloat and the community engaged.  I am grateful for the ways each of you have supported me, and the org, [sic] during this difficult time as we worked to position [Employer] for the future.

I am very optimistic about where we are headed, and also cognizant of the adaptations the organizations [sic] needs to make to move confidently forward.  The management proposal outlined today represents what I think is the best plan to operate with clarity and decisiveness, developing a leadership team with the necessary capacities and commitment to [Employer] and its community.

Attached are the resumes for Meg DeBrito and Ari Rosenberg – the proposed co-directors – as well as a draft org chart [sic] and role responsibilities.  The draft budget I circulated this week reflects these changes and is achievable.  I know they are eager to discuss these items with you, and in their time at [Employer] have gone above and beyond in demonstrating their ability to contribute positively to this organization and its people.  My goal is to leave [Employer] better than where I found it, and I believe this proposal achieves that.

I am committed to seeing this process through, and will be available to help with the transition.

Thank you.

C.R. Item No. 3, Employer Questionnaire, Claimant's Resignation Email to Board of Directors dated 11/13/18.

11/13/18. Based upon the foregoing, Claimant still had options available to him to preserve his employment, if he so desired.

Claimant could have, in the exercise of his authority as the executive director, taken on other roles so that he could receive a paycheck. Instead of hiring new management to focus on sales, Claimant could have attempted to perform the sales work. Alternatively, Claimant could have performed several smaller roles so that he could receive a paycheck instead of proposing additional hiring to the Board of Directors when he resigned. C.R. Item No. 3 Employer Separation Information, Email from Claimant to the Board of Directors dated 11/13/18; T.T. 4 (testifying that "I hired other people to fill the new roles that we were going to create at a much lower rate of pay and a different set of responsibilities").

Notably, the Referee, and the Board, did not accept Claimant's explanation that he could no longer perform other roles with Employer. Referee's Decision/Order at 3; Board's Decision at 1. The Referee found that "the organization has hired new individuals in different management roles, and the Referee *is not convinced* that the Claimant was unable to perform different roles within the organization." Referee's Decision/Order at 3 (emphasis added). The Board adopted and incorporated the Referee's findings and conclusions in its order. Board's Decision at 1. The Board is the ultimate finder of fact and questions regarding the weight of evidence and witness credibility are solely within its province and will not be disturbed by this Court. *See Morgan*, 108 A.3d at 188; *A-Positive Elect. v. Unemployment Comp. Bd. of Review*, 654 A.2d at 299, 301 (Pa. Cmwlth. 1995).

However, we agree with Claimant that the Board erred by relying on the following to support its decision: "[C]laimant acknowledged that the [E]mployer

10

explored adding him as a part-time grant manager after he left his employment." Board's Decision at 1. When evaluating whether a claimant has a compelling and necessitous reason to quit his job, we are to look at the circumstances that existed when the claimant quit to ascertain whether there was real and substantial pressure to terminate employment. *Morgan*, 108 A.3d at 187. To the extent the Board relied on what occurred *after* Claimant quit to affirm the Referee, such was error. The error was harmless though as there were other management roles Claimant could have performed at the time of his voluntary separation. Since the Board adopted the Referee's findings and conclusions to support its decision, Board's Decision at 1, we affirm the Board's decision to the extent it relied on the Referee's determination that Claimant failed to make a reasonable effort to preserve his employment by exhausting all options available before quitting.

Because Claimant could have performed other roles for Employer, the Board's conclusion that Claimant failed to meet his burden of showing that he quit for necessitous and compelling reasons is supported by the record. Therefore, the Board did not err when it concluded that Claimant quit for personal reasons and is ineligible for benefits under Section 402(b) of the Law.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

11

Ryan Kuck,  :
          Petitioner  :
            :
        v.  :
            :
Unemployment Compensation  :
Board of Review,  :   No. 862 C.D. 2019
          Respondent  :

# O R D E R

AND NOW, this 12th day of May, 2020, the May 22, 2019 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge