IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Thomas Tewell, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 691 C.D. 2021 |
| | : | Submitted: December 30, 2021 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE WOJCIK                          FILED: July 8, 2022

Thomas Tewell (Claimant), *pro se*, petitions for review of the decision of the Unemployment Compensation Board of Review (Board) dated April 22, 2021, which affirmed the decision of the Board's referee (Referee) denying unemployment compensation (UC) benefits to Claimant under Section 402(b) of the Unemployment Compensation Law (Law).[1]  After careful review, we affirm.

The procedural history of this matter is as follows.  The Office of UC Benefits determined that Claimant was ineligible for UC benefits because he voluntarily separated from employment without necessitous and compelling cause. Certified Record (C.R.) at 13-15.[2]  Claimant appealed the denial, alleging that

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).  Section 402(b) of the Law provides, in relevant part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to leaving work without cause of a necessitous and compelling nature. . . ."

[2] We cite to the Certified Record using the printed page numbers.

Pennsylvania Transformer Technology, Inc. (Employer) failed to provide viable personal protective equipment (PPE) per COVID-19 guidelines and created an unsafe working environment. *Id.* at 17-22. The Referee provided notice of a hearing scheduled for January 4, 2021, to consider whether Claimant voluntarily separated from employment without necessitous and compelling cause in violation of Section 402(b) of the Law, or whether Claimant was discharged from employment for willful misconduct in violation of Section 402(e) of the Law.[3] *Id.* at 28-31. The Referee provided notice that the January 4, 2021 hearing was continued and rescheduled for January 25, 2021, and would be conducted by telephone. *Id.* at 28-38. Employer submitted various documents regarding its COVID-19 policies to be considered at the hearing. *Id.* at 40-75. A telephone hearing was held before the Referee on January 25, 2021, at which Claimant appeared and testified, and where Employer appeared and offered the testimony of four witnesses. *Id.* at 77-98. The Referee confirmed that Claimant received the documents submitted by Employer. *Id.* at 80-81. The Referee reviewed that the parties had the right to have an attorney or non-legal advisor present if they chose, present testimony and evidence, question witnesses, and request an in-person hearing. Both parties testified that they understood their rights. *Id.* at 81-82.

The Referee explained that under Section 402(b) of the Law, Claimant had the burden to prove that his resignation was for necessitous and compelling reasons. C.R. at 82. The Referee then identified the documents in the file, which

---

[3] Section 402(e) of the Law states, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ." 43 P.S. §802(e). After determining that Claimant resigned voluntarily from employment, the appeal proceeded on Section 402(b) of the Law only, which Claimant did not dispute. Claimant testified that "[i]t was a quit for a viable reason." C.R. at 88.

2

were admitted into the record without objection. *Id.* at 82-85. The Referee explained how the hearing would proceed, with each party having the opportunity to question the other party's witnesses. *Id.* at 86. Claimant testified that Employer failed to provide appropriate PPE, and that the lack of appropriate PPE caused him to be "sick all the time and it just got to be too much." *Id.* at 88. Claimant testified that he had a "compromised respiratory system." *Id.* at 89. When the Referee asked Claimant to provide more specific information about his respiratory issue, Claimant responded "[t]hat's none of your concern. That's between me and my doctor." *Id.* The Referee responded that "if you're raising it as a reason for why you quit, sir, it would be relevant for me to know. But, if you don't want to tell me that's fine. That's up to you." *Id.* Claimant testified that he did not inform Employer about the lack of PPE or about his concerns, stating he "no longer had any talk[s] with the management." *Id.* at 89-90. He further testified that on June 1, 2020, the day he was to return to work after vacation, he texted Employer's Production Supervisor, Bob Cook (Supervisor), that "I probably wouldn't be back. I was tired of being sick all the time, and it's just—it's not worth the stress." *Id.* at 90.

Employer presented testimony from Nick Smith, Employer's Health and Safety Manager (Safety Manager), about its efforts to comply with COVID-19 requirements. C.R. at 91-95. Safety Manager testified that as a critical infrastructure business permitted to remain open, Employer provided masks for employees, face shields for employees who had difficulty working with masks, hand sanitizer, enhanced cleaning, and social distancing. *Id.* at 91-92. The Referee asked Safety Manager if he was aware of PPE shortages leading up to Claimant's separation from employment, as Claimant alleged, to which Safety Manager replied, "[n]o." *Id.* at 93. Claimant asked Safety Manager questions about the availability of disinfectant

3

spray and cleaning practices, to which Safety Manager responded. *Id.* at 94-95. Claimant and the Referee asked Safety Manager about Employer's efforts to enforce employee mask requirements. Safety Manager testified that during the first few months of the COVID-19 emergency, requirements were a "continuous moving target" and that Employer "adapted as we learned more information." *Id.* at 95. Safety Manager testified that when employees failed to wear masks as required, Employer's Human Resources Manager talked to employees, warned them to comply, and eventually issued disciplinary suspensions to employees who failed to comply. *Id.* at 65-69, 95.

Employer then presented testimony from its Supervisor about the text message that Claimant sent on June 1, 2020, and Supervisor's reply on the same date. C.R. at 96-97. Supervisor testified that Claimant was a good employee and that Supervisor never had any problems with Claimant's work. *Id.* at 96. He testified that he received a text from Claimant early in the morning on June 1, 2020, and Claimant agreed that Supervisor could read the text messages at the hearing. *Id.* Supervisor testified as follows:

> [Claimant] said, "I think I'm about done, Bob. Throughout this whole ordeal, I have had three masks. I am tired of being sick. I'm tired of my nose running off my face. I am tired of asking for a clean mask. I am just tired." And then I [(Supervisor)] answered him [(Claimant)], just to sum it up, that, you know, look me up when I get into the plant and we'll talk about it then.

*Id.* at 97. Supervisor then read his reply to Claimant which stated, "I'll [(Supervisor)] look you [(Claimant)] up when I get in so you can tell me what's going on. I'm not sure who you've been asking for a new mask, but there is always a box out for anyone who wants to use it." *Id.* Employer asked Supervisor if Claimant's text message was the first time that he knew that Claimant did not have

4

a mask or was asking for a mask, to which he replied, "[t]o my recollection, yes." *Id.* The Referee asked Claimant if he had any questions for Supervisor, and Claimant did not. *Id.* The Referee then asked if Claimant wished to add anything else, and Claimant replied, "[no], not at this time." *Id.* Employer gave a closing statement, Claimant did not, and the Referee adjourned the hearing. *Id.* at 97-98.

The Referee then issued a decision dated January 28, 2021, denying Claimant's UC benefits. C.R. at 100-04. The Referee made the following findings. Claimant was last employed by Employer as a full-time electronic finisher from May 29, 2019, to May 28, 2020, Claimant's last day of work. *Id.* at 100. Claimant was off work for a scheduled vacation on May 29, 2020, and was scheduled to return to work on June 1, 2020. *Id.* "On the morning of June 1, 2020, [] Claimant sent a text message to his manager stating, 'I think I'm about done.'" *Id.* Claimant's text message continued and referenced a lack of masks being provided by Employer and that Claimant was ill. *Id.* at 101. Prior to resigning, Claimant had not notified Employer of any purported lack of PPE equipment or supplies related to COVID-19. *Id.* As of Claimant's last day of work, Employer had masks on hand for employees, placed hand sanitizer near the time clock, enforced social distancing and mask wearing for employees, had face shields available for employees who had difficulties wearing a mask, and had implemented a cleaning protocol at least once a day. *Id.* The Referee found that Claimant "voluntarily resigned his employment on June 1, 2020," by way of text message, purportedly due to concerns with exposure to COVID-19 in the workplace, and the lack of PPE. *Id.* Claimant "did not raise any such concerns with [] Employer prior to submitting his resignation." *Id.*

The Referee concluded that Claimant failed to sustain his burden to prove he had necessitous and compelling cause for leaving his employment. C.R.

5

at 101. The Referee acknowledged that unreasonable or dangerous work conditions that could jeopardize an employee's health can constitute good cause for leaving employment, but the employee "must have communicated [his] concerns to the Employer prior to quitting." *Id.* (emphasis omitted). The Referee found that, although Claimant contended he had a compromised respiratory system,

> [n]otwithstanding the vague nature of [] Claimant's testimony regarding any health condition which may have caused [] Claimant to have elevated concerns regarding contracting the C[OVID]-19 virus, the Referee credits [] Employer's testimony that [it] had provided, or made available, PPE to employees including masks, face shields, [and] hand sanitizer, and was enforcing social distancing and the wearing of masks, as well as having implemented a cleaning protocol to disinfect surfaces.

*Id.* The Referee further concluded that, "by Claimant's own admissions[,]" Claimant "failed to notify [] Employer of any such concerns prior to resigning. As such, even finding [] Claimant's concerns legitimate, [] Claimant failed to communicate these concerns to [] Employer prior to resigning in order to allow [it] a reasonable opportunity to respond." *Id.*

Claimant timely appealed the Referee's denial to the Board alleging several errors in how the Referee conducted the hearing, in the Referee's credibility determinations, and the denial of his rights under the Sixth and Seventh Amendments to the United States (U.S.) Constitution,[4] and claiming that requiring

---

[4] The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed … and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Claimant is not accused of any crime, and these UC proceedings are not a criminal prosecution. Therefore, the Sixth Amendment does not apply to this appeal. Further, we find that Claimant waived his Sixth Amendment claim, because he failed to present argument on it in his brief to this Court. *See* Pa. R.A.P. 2119(a) ("The argument shall **(Footnote continued on next page…)**

6

essential workers to work on Employer's premises during COVID-19 "is not only discrimination, it is akin to slavery."[5] C.R. at 106-11.

The Board took no additional evidence, considered the entire record, and issued a decision and order dated April 22, 2021, in which the Board concluded that the Referee's denial was proper under Section 402(b) of the Law. C.R. at 113-20. The Board found "no credible medical evidence in support of [] [C]laimant's assertion that he suffers from a respiratory ailment." *Id.* at 113. The Board further found

> credible [] [E]mployer's testimony that [] [C]laimant
> never raised any health or safety concerns to [] [E]mployer
> prior to the final text message and that [] [C]laimant's
> [S]upervisor responded by indicating that masks in the
> workplace were available for everyone and that he would
> talk with [] [C]laimant about his concerns when he
> reported for work. [] [C]laimant never responded.

*Id.* The Board further concluded that Claimant's due process and constitutional claims were without merit. *Id.* The Board concluded that "Claimant was given

---

be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999) (holding that the failure to develop issue in appellate brief results in waiver); *Browne v. Department of Transportation*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver.").

The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

[5] The Thirteenth Amendment provides, in relevant part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII.

7

sufficient opportunity to present his case and he was in no way impeded by the Referee in doing so." *Id.* The Board concluded that the Sixth and Seventh Amendments were not applicable to civil, administrative proceedings, and that the Law does not provide for jury trials. *Id.* The Board further concluded that Claimant never raised these constitutional issues before the Referee, and "therefore, [they] are waived." *Id.* The Board adopted and incorporated the Referee's findings and conclusions, and affirmed the Referee's decision denying Claimant's eligibility for UC benefits. *Id.*

Claimant then petitioned for review to this Court.[6] Claimant first filed a letter appeal to this Court, which the Court accepted to preserve Claimant's appeal date.[7] The Court directed Claimant to file a petition for review, which he did, in which Claimant presented multiple grounds for error.[8] Claimant argues that the Board erred in concluding that he failed to prove that he had necessitous and compelling cause to resign, based on the Referee's crediting of Safety Manager's testimony regarding PPE that was available to Claimant at the time Claimant resigned, and because the Referee did not credit Claimant's testimony about his underlying health issues. In his brief to this Court, Claimant expands upon the difficulties that he faced while working for Employer during the COVID-19 emergency, but he provides no legal authority to question the Referee's or Board's credibility determinations, other than his disagreement with those determinations.

---

[6] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law occurred, or whether necessary findings of fact were supported by substantial evidence. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 197 n.3 (Pa. Cmwlth. 2008).

[7] *See Pro Se* Letter on How to Appeal dated May 27, 2021.

[8] We have reordered Claimant's questions for ease of discussion.

8

The Board responds that it resolved conflicting evidence in Employer's favor, and that substantial evidence supports its findings. After careful review of the record, we discern no error in the Board's findings, based on its credibility determinations. It is well settled that

> the Board is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the Board[']s findings, they are conclusive on appeal. . . . [T]he prevailing party below [] is entitled to the benefit of all reasonable inferences drawn from the evidence.

*Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (internal citations omitted).

Further, we consider Claimant's general argument that the Board erred in denying UC benefits when Claimant believes he provided necessary and compelling reasons for his resignation based on unsafe working conditions or by establishing that his health condition was a compelling reason.[9] The Board responds that its decision was proper where Claimant failed to satisfy his burden of proving that he resigned for necessary and compelling reasons.

Whether a claimant had a necessitous and compelling reason to resign is a question of law subject to our plenary review. *Department of Corrections, State Correctional Institution at Graterford v. Unemployment Compensation Board of Review*, 547 A.2d 470, 473 (Pa. Cmwlth. 1988). We note that a claimant has the

---

[9] Although Claimant failed to specifically address this issue in his brief, we are inclined to construe *pro se* materials liberally, so long as we can conduct meaningful appellate review. *See Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth. 1999).

burden of establishing that necessitous and compelling reasons existed for quitting his employment. *Green Tree School v. Unemployment Compensation Board of Review*, 982 A.2d 573, 577 (Pa. Cmwlth. 2009). A claimant must establish that he acted with ordinary common sense in quitting his job, that he made a reasonable effort to preserve his employment, and that he had no other real choice than to leave his employment. *Id.* In this context, "[a]n unsafe working environment can give an employee a necessitous and compelling reason to resign." *Id.* To sustain this burden, a claimant must demonstrate "by objective evidence" that his working conditions were unsafe and placed him at risk. *Id.* at 578. "[S]afety 'fears' alone do not constitute a compelling reason to resign." *Id.*

We further note that for a claimant to establish that his health condition constituted a compelling reason to resign, he must demonstrate through competent and credible evidence that "(1) health reasons of sufficient dimension compelled the employee to quit; (2) the employee informed the employer of the health problems; and (3) the employee is able and available for work if the employer can make a reasonable accommodation." *Watkins v. Unemployment Compensation Board of Review*, 65 A.3d 999, 1004-05 (Pa. Cmwlth. 2013). Although this standard "does not require medical testimony, there may be cases where a claimant's testimony and supporting documents are inadequate." *Id.* at 1005. Further, a claimant's failure "to meet any one of these conditions will bar a claim for [UC] benefits." *Van Duser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 550 (Pa. Cmwlth. 1994).

As this Court has recently explained:

> Whether the reason for [the c]laimant's concerns were adequate safety measures by [the e]mployer or fears related to her and/or her father's health, or both, [the

10

c]laimant's burden to make a reasonable effort to preserve her employment required her to give notice to [the e]mployer as to her concerns and health conditions and allow [the e]mployer the opportunity to modify her work conditions. This is the case even where there is a real and serious safety concern, *see Iaconelli v. Unemployment Compensation Board of Review*, 423 A.2d 754, 756 (Pa. Cmwlth. 1980), or where a claimant has a medical condition which endangers her, *see St. Clair Hospital v. Unemployment Compensation Board of Review*, 154 A.3d 401 (Pa. Cmwlth. 2017). Once communicated, an employer must have a reasonable opportunity to make accommodations with respect to the work conditions and/or medical condition. *See Blackwell v. Unemployment Comp*[*ensation Board*] *of Rev*[*iew*], 555 A.2d 279, 281-82 & n.6 (Pa. Cmwlth. 1989).

*Lundberg v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 29 C.D. 2021, filed October 14, 2021), slip op. at 3.[10]  *See also Hastings v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 104 C.D. 2021, filed April 13, 2022).

We discern no error in the Board's determination that Claimant failed to prove that his work environment was unsafe due to Employer's failure to provide appropriate PPE, or that Claimant's health condition constituted necessitous and compelling cause to resign. The Board is the ultimate finder of fact, and we cannot review its credibility determinations on appeal. *Ductmate Industries, Inc.*, 949 A.2d at 342. Further, substantial evidence in the record supports the Board's determination that Claimant failed to establish that his health condition constituted a compelling reason for him to resign. Although Claimant testified at the hearing that he had a "compromised respiratory system," he declined to provide any specifics

---

[10] *See* Pa.R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

11

about his health condition, and he offered no medical evidence to demonstrate that he had respiratory issues. C.R. at 89. Claimant admitted and Employer confirmed that Claimant did not inform Employer about the lack of PPE or his health condition before he resigned. *Id.* at 89, 93, 97. Further, after he submitted his resignation by text message, Claimant failed to respond to Employer's offer to discuss the availability of PPE or to otherwise assist Claimant. *Id.* at 97. Because Claimant failed to satisfy any of the conditions to demonstrate that his health condition constituted a compelling reason to resign, the Board did not err in denying UC benefits. *Watkins*, 65 A.3d at 1004-05; *Van Duser*, 642 A.2d at 550.[11]

Claimant next argues that he was denied due process because the Referee rescheduled the January 4, 2021 hearing without reason or notice, and because the Referee rushed the hearing and failed to give Claimant time to think and ask questions.[12] The Board denies that Claimant's due process rights were violated. Beyond simply posing these questions, Claimant failed to develop or argue these issues in his brief. Therefore, we find that Claimant waived these issues. *See* Pa. R.A.P. 2119(a); *Spotz*, 716 A.2d at 585; *Browne*, 843 A.2d at 435. Even if not waived, we find no conduct by the Referee that denied Claimant his due process rights. As to the continuance, Claimant did not argue that he was prejudiced by the

---

[11] *See also Lundberg*, slip op. at 4 ("While one can sympathize with [the c]laimant's fears in the face of the chaos attendant to the early stages of the COVID-19 pandemic, the [L]aw does not excuse her of the duty to inform [the e]mployer of her safety concerns and health problems and afford [the e]mployer the opportunity to mitigate and/or accommodate them.").

[12] In his brief to this Court, Claimant also asks why he does not have a transcript of the January 25, 2021 hearing before the Referee. Beyond simply posing this question, Claimant failed to argue this issue in his brief. Therefore, we find that Claimant waived this issue. *See* Pa. R.A.P. 2119(a); *Spotz*, 716 A.2d at 585; *Browne*, 843 A.2d at 435. Further, our review of the record reveals no evidence that Claimant asked the Referee for a transcript of the hearing. Section 502(a) of the Law provides that a transcript and audio recording of the hearing shall be made available upon "***written request to the referee***." 43 P.S. §822(a) (emphasis added).

12

Referee's rescheduling of the hearing. Claimant received notice of the continuance and participated in the January 25, 2021 hearing before the Referee. C.R. at 28-31, 33-38, 77-98. It is well settled that "we may override the judgment of the referee as to whether or not to grant a continuance only if there has been 'a clear showing of an abuse of discretion.'" *Steadwell v. Unemployment Compensation Board of Review*, 463 A.2d 1298, 1300 (Pa. Cmwlth. 1983) (citations omitted). Even if Claimant had not waived this issue, we find no clear showing that the Referee abused his discretion by rescheduling the hearing.

Similarly, even if this claim is not deemed to have been waived, we find no conduct by the Referee that denied Claimant the opportunity to be heard at the January 25, 2021 hearing. This Court has held that a claimant's due process rights are not violated when a referee has advised a claimant of his rights, asked a claimant if he had objections throughout the hearing, and asked a claimant if he had anything to add before the hearing ended. *Kreibel v. Unemployment Compensation Board of Review*, 453 A.2d 737, 738 (Pa. Cmwlth. 1982).

Here, the Referee confirmed that Claimant received the documents submitted by Employer. C.R. at 80-81. The Referee explained to Claimant that he had the right to have an attorney or non-legal advisor present if he chose, present testimony and evidence, question witnesses, and request an in-person hearing, which Claimant stated he understood. *Id.* at 81-82. The Referee explained Claimant's burden of proof. *Id.* at 82. The Referee assisted Claimant in presenting his own testimony. *Id.* at 88-90. After each of Employer's witnesses testified, the Referee gave Claimant the chance to ask questions if he chose. *Id.* at 93-95, 97. The Referee explained how the hearing would proceed, with each party having the opportunity to question the other party's witnesses. *Id.* at 86. Further, we find no error in the

13

Referee's conduct at the hearing, when the Referee followed the Board's regulations, which require a referee to assist a *pro se* claimant by advising him of his rights, aiding him in examining and cross-examining witnesses, and giving him "every assistance compatible with the impartial discharge of [his] official duties." 34 Pa. Code §101.21(a). Although the Referee reminded parties to eliminate repetitive testimony so that the hearing could be completed without scheduling a second hearing, we discern no violation of Claimant's due process rights, when the Referee exercised his discretion so that all parties had the chance to present testimony necessary to establish their rights. 34 Pa. Code §101.21(b).

As to the remaining constitutional issues, Claimant argues that requiring him to work in-person during COVID-19 violated his rights under the Thirteenth Amendment, and that the Referee and Board violated his right to a jury trial under the Seventh Amendment. The Board responds that because Claimant failed to preserve or argue these constitutional issues, they are waived. Claimant failed to raise his claims under the Seventh and Thirteenth Amendments in his appeal to the Referee or before the Referee. C.R. at 17-22, 77-98. Because Claimant failed to raise these issues "at the earliest possible opportunity" before the Referee, Claimant waived them. *Dehus v. Unemployment Compensation Board of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988). Further, beyond simply raising these questions or repeating them in his brief to this Court, Claimant failed to develop or argue these issues in his brief. Therefore, we find that Claimant waived these issues. *See* Pa. R.A.P. 2119(a); *Spotz*, 716 A.2d at 585; *Browne*, 843 A.2d at 435.

Even if these claims are not deemed to have been waived, we find no merit in Claimant's constitutional arguments. The Board did not find, and Claimant provides no authority, that being required to perform essential work in-person during

14

COVID-19 put Claimant in a position akin to slavery in violation of the Thirteenth Amendment. Further, the Board correctly concluded that parties to a UC administrative proceeding do not have the right to a jury trial under the Seventh Amendment. "It is well[-]settled that, unlike the Sixth Amendment to the [U.S.] Constitution's rights to a jury trial in criminal cases, the Seventh Amendment jury trial guarantee in civil cases has not been applied to the states by incorporation into the Fourteenth Amendment."[13] *Bensinger v. University of Pittsburgh Medical Center*, 98 A.3d 672, 676 n.6 (Pa. Super. 2014).[14] Section 502(a) of the Law provides that a referee shall hold hearings and make determinations regarding UC benefit appeals, 43 P.S. §822(a), and Claimant participated in that hearing, which is his right under the Law.

Accordingly, the Board's decision is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[13] The Fourteenth Amendment provides, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV §1.

[14] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Tewell,                          :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 691 C.D. 2021
                                        :
Unemployment Compensation               :
Board of Review,                        :
                                        :
                    Respondent          :

# **O R D E R**

AND NOW, this 8ᵗʰ day of July, 2022, the decision of the Unemployment Compensation Board of Review dated April 22, 2021, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge